STANFIELD v. STANFIELD.

No. 875, Ind. T.   Opinion Filed November 16, 1908.

(98 Pac. 334.)

1   DIVORCE—Custody of Children—Modification of Decree After Term. Where, on the trial of a motion, filed by the father after the term, asking for the modification of a decree of divorce granting the custody of children to the mother, the evidence fails to show a change of condition from that which existed at the time of its rendition, other than that the mother, who had theretofore kept the children within the jurisdiction of the court, had, at the time of the hearing of said motion, departed with them from the jurisdiction, and where the father, who asked their custody, testifies he has no home to which they may be taken, but that he intends to remove them from the court's jurisdicion and place them with his elderly father and stepmother, **Held,** that the court exceeded its discretion in setting aside such decree and unqualifiedly awarding the custody of the children to the father.

2.   SAME—Modification—Affecting Alimony. Where, in a case a divorce is decreed, for the aggression of the husband, and alimony is adjudged to the wife in accordance with an agreement of the parties, duly entered into and made a part of such decree, the same, unaffected by fraud or mistake, is not subject to modification, upon motion filed by the former husband, after the term at which the original decree was made.

(Syllabus by the Court.)

*Error from the United States Court for the Northern District of the Indian Territory; Joseph A. Gill, Judge.*

Action by Winifred T. Stanfield against Wade S. Stanfield. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

From the record in this case it develops that the plaintiff, Winifred T. Stanfield, appellant, brought her suit in the United States Court for the Northern District of Indian Territory at Vinita, against the appellee, Wade S. Stanfield, for divorce and alimony, and that an agreement was entered into between the said parties providing for the support, care, and custody of the two children of the said marriage, which were boys, and of the ages at this time, if living, about 13 and 16 years, and in addition, for alimony to be paid to the plaintiff by the defendant in the sum of $150 per month, with additional allowances in case of sickness, and a proviso for its increase in event of the accumulation of greater wealth by defendant, provided plaintiff remained single and unmarried. The decree, based upon the issues in the cause and this stipulation, is as follows:

"Upon the complaint of Winifred T. Stanfield this cause came on for hearing, the defendant being personally present, and the plaintiff by her attorney, and the court being sufficiently advised, from the deposition of plaintiff and the examination of witnesses, that plaintiff and defendant were married in the state of Missouri on the 26th day of June, 1889; that they each now reside, and have continuously resided, in the Indian Territory for more than one year next before the commencement of this action; that the cause of divorce, set out in plaintiff's complaint, occurred and has existed in the Indian Territory within five years next before the commencement of this action. The court being further advised from the evidence that such incompatibility of temper exists between plaintiff and defendant as to render them wholly unsuited for each other; that the defendant has offered such indignities to the person of the plaintiff as to render her condition as wife intolerable; that said indignities began about the year 1896, and have continued up to the present time; that since said date plaintiff and defendant have occupied separate rooms and beds, and have not cohabited as husband and wife—it is therefore decreed, ordered, and adjudged that the bond of matrimony heretofore existing between plaintiff and the defendant be, and the same is forever dissolved, and the plaintiff is granted an absolute divorce from the defendant.

"It is further decreed that the stipulation between plaintiff

and the defendant on file relative to the disposition of the property, alimony, and custody of the two minor children; Rowland S. and Cecil A. Stanfield, is reasonable and just, and same is approved and made a part of this decree, to wit, that the plaintiff herein shall have the custody, care, and control of the said minor children, and that the defendant herein may have the privilege of visiting with the above children at such reasonable times as may be agreeable with the plaintiff herein, and may have the said children visit him during vacation between terms of school at his own expense, and that the defendant herein shall pay the plaintiff $15 per month for each of said children during such times as she may be keeping house and boarding the said children with her, and in addition thereto shall bear all expenses incident to their care and maintenance, such as clothing, books, medical attention, and other incidents, and all expenses incident to their education, and at such times as it becomes necessary for said children to attend college the defendant herein shall bear all of the expense incident to giving them a collegiate education: that the defendant herein shall pay to the plaintiff, as alimony, $150 per month until such time as she shall remarry, said payment to be made at the first of each month, in advance, and that in addition thereto the defendant will bear the expense incident to any sickness of the plaintiff, such as medical attention, medicines, hospital expenses, and nurse hire, and other expenses incident to such sickness, if any should arise; that in the event of accumulation of greater wealth or property interest upon the part of the defendant herein, the said sum of alimony herein provided may be increased by the court in keeping with the financial condition of the defendant, provided the plaintiff remain single and unmarried. It is further ordered that the plaintiff herein release and relinquish all claims to any property which may be held by the defendant herein."

About seven months thereafter, the defendant, desiring to be relieved of the payment of the alimony provided for under his stipulation and the decree, filed in the same court the folowing sworn application:

"Comes now the defendant herein, and alleges that on the 21st day of October, 1905, plaintiff was divorced from this defendant, and that a decree of court was entered, giving to the plaintiff herein as alimony $150 per month until such time as she

should remarry, and in addition thereto defendant was to bear expenses incident to any sickness of plaintiff, such as medical attention, medicine, hospital expenses, nurse hire, and other expenses, if any should arise. Defendant states that, in accordance with such decree of the court, he has regularly and consecutively thereafter complied with the decree of the court. Defendant further alleges the fact to be that plaintiff has been guilty of such conduct on her part since the decree of court herein as to forfeit any right to any further claim to alimony or expenses on the part of the defendant. Wherefore the defendant prays that the court set this matter down for hearing as soon as possible, and upon hearing that this defendant be relieved from any further payment of alimony or expenses of the plaintiff herein."

At the time of filing the foregoing application, the defendant ceased paying the alimony provided for. No action having been taken upon this application, the defendant filed the following amendment to the same on January 22, 1907:

"Comes now Wade S. Stanfield in his own proper person, and for an amendment to motion filed on May 29, 1906, by this petitioner, shows to the court that on October 11, 1905, the plaintiff herein filed her suit for divorce from your petitioner, and that a decree of divorce was granted on October 21, 1905, by the Honorable Joseph A. Gill, judge, presiding, divorcing the plaintiff in said case from your petitioner, and awarding to the plaintiff herein $150 per month alimony and the custody of two minor children, Rowland Stanfield and Cecil Stanfield, and decreeing that your petitioner should pay $30 per month board for the said minor children and their expenses.

"(2) Your petitioner states the fact to be that, in accordance with said decree of this court, he regularly and consecutively thereafter complied with the decree of said court in all matters, and made all payments thereunder until June 1, 1906, the last payment of alimony having been made on about May 1, 1906, for the month of May, being payment up to June 1, 1906, at which time your petitioner refused to pay further alimony, but since said date your petitioner has regularly paid the board of said children and all their expenses, as provided in said decree.

"(3) That on May 29, 1906, your petitioner filed his motion in this case to vacate and set aside said order for the payment of

alimony, for the reason that the plaintiff, by her misconduct, had forfeited her right to claim alimony in any amount from this petitioner, and rendered it absolutely impossible for him to comply with said order.

"(4)    The plaintiff, contrary to the order of the court herein, has, for one year last past, refused to allow your petitioner to see his said children, and stated to said petitioner that she would never again allow him to see them.    That since said statement by plaintiff herein she has not allowed the said children to even speak to their father, although during all of said time your petitioner has borne all of their expenses and paid board for them, as provided by the decree herein.

"(5)    That plaintiff has recently communicated with the father of petitioner, and told him that petitioner would not furnish clothing for said children, and that they had nothing to wear, all of which was absolutely false.    That acting upon her statements, your petitioner's father proceeded at once to buy suits of clothing and send them to said children.

"(6)    That in incurring expenses for said children for which petitioner was responsible plaintiff has willfully and needlessly been extravagant, and has incurred exorbitant and unnecessary expenses to such an extent as to show that she was prompted by malice, and in utter disregard of any attempt to be reasonable or fair in incurring expenses.

"(7)    That the said Rowland Stanfield is now 14 years old, and Cecil Stanfield is 11 years old, and both are boys.

"(8)    That the said Rowland and Cecil Stanfield, since the decree of divorce herein, have been staying with their grandmother, Mrs. M. A. Hughes, and Emmet Hughes, their uncle, in the town of Vinita, Ind. T., at which place the plaintiff resides when she is in Vinita, and at which place she keeps said minor children, and to whom the board of said minor children is to be paid.

"(9)    That on the 6th day of June, 1905, your petitioner, at the instance and request of the said M. A. Hughes and the said Emmet Hughes, signed a note with the said Emmet Hughes, as his surety thereon, to the International Bank & Trust Company of Vinita, Ind. T., in the sum of $300, with 8 per cent. interest, the said M. A. Hughes guaranteeing to your petitioner the payment of said note, and the said Emmet Hughes that he would pay out of his salary as clerk in the postoffice each month of said note until the same was satisfied, all of which the said M. A.

Hughes and the said Emmet Hughes have absolutely failed to do, and that your petitioner has been compelled to pay the said note and interest because of his suretyship thereon.    That notwithstanding this fact, each month your petitioner has regularly and consecutively paid the board of said minor children to the said M. A. Hughes; the same being the arrangement made for the care and attention of said minor children by their mother.

"(10)   Your petitioner alleges the facts to be that, during all the time since the separation of plaintiff and your petitioner herein, his said minor children have had the privilege of going to the Golden Rule and the Jumbo Mercantile Company, in Vinita, and purchasing any and all goods necessary for their welfare and comfort, and have the same charged to your petitioner, up until a very recent date, to wit, the ——— day of January, 1907, at which date your petitioner mailed to the said Rowland Stanfield a letter with reference to the same, a copy of which is herewith attached, and marked 'Exhibit A.'    That since the date of said letter your petitioner has not had any communication with the said two children, and does not know whether other goods have been purchased for them or not.

"(11)   That at all times prior to the date plaintiff made her threat that she would never allow said children to speak to your petitioner, their father, again they were loving and obedient to your petitioner, displaying affection for their father to a very marked extent.  That during the time plaintiff and petitioner were occupying the same house prior to the decree herein, your petitioner had to look after the clothes and wants of his two children, but that the plaintiff promised that conditions should be changed, and that they should receive better treatment at her hands after the decree of divorce, in all of which she has wholly failed.    That said children have not and are not cared for as she agreed to do, but on the contrary, she has wholly failed to care for them and look after them as she agreed to do, in a stipulation between plaintiff  and petitioner at the time of the decree in this case.    That if said children remain in her custody, it will be impossible for your petitioner to properly care for them or provide for them as should be done, and that plaintiff, being angered and embittered as she is, will incur needless and unnecessary expenses which this petitioner is unable to bear.    That the said plaintiff is not a fit or proper person to have the care and custody of the said two children.    Your petitioner can better look after and care

for them, and that it is for the best interests of said children that the custody be taken from the plaintiff and given to petitioner.

"(12)    That on March 22, 1906, your petitioner was married in the city of Memphis, Tenn., to Miss Mary Louise Smith, and soon returned to Vinita to live there.    That the plaintiff herein, although your petitioner was regularly paying her $150 per month in advance as alimony, and in all other things directly complying with the order of the court herein as to all things and matters therein contained, began at once a system of conduct intendded to cause trouble between your petitioner and his wife, relentlessly and persistently continuing, by all means possible, to harass petitioner's wife, until finally her nervous system gave way and she became a mental and nervous wreck, due solely to the conduct of the plaintiff, resulting in a prolonged and serious spell of sickness, by which she was confined to her bed for nearly 60 days, endangering the life of petitioner's wife, from which she has not recovered, if, indeed, she ever will recover, resulting in the separation of petitioner and his wife, and the expenditure of a great amount of money necessary to properly care for her, all of which was the direct result of misconduct of plaintiff, and which rendered it absolutely impossible for this petitioner to longer continue to pay any amount of alimony whatsoever, at which time your petitioner filed his motion to vacate said order.

"(13)    That until plaintiff had succeeded by her conduct in dethroning the reasoning of petitioner's wife, she was kind, gentle, and attentive to petitioner in every way, giving to petitioner more attention, love, and fidelity in one week than petitioner received from plaintiff in nearly 17 years of married life.

"(14)    That as a direct result of the misconduct of plaintiff, your petitioner has been humiliated, and suffered untold mental anxiety, misery, and agony, resulting at one time in the loss of 25 pounds of weight in 12 days.

"(15)    That the plaintiff has, since the decree of divorce herein granted, intentionally interfered with the business of petitioner, thereby causing petitioner loss of property.

"(16)    That during all the time, from the marriage of plaintiff and petitioner, until the decree of divorce was granted herein, plaintiff was extravagant and wasteful to an unwarranted degree, and did not, in any particular, assist or contribute to the maintenance of the household, but on the contrary, expended all, and more than, your petitioner was able to make, and necessitated your

petitioner's continually borrowing money and keeping in debt, during all of which time plaintiff never contributed one dollar to the household expenses; that she had property of her own in the state of Missouri during all of this time, but permitted her mother to use and occupy same without charge; that plaintiff has never at any time contributed or assisted your petitioner to acquire or accumulate any property of any kind or character whatsoever.

"Wherefore, the premises considered, your petitioner prays that the custody of said minor children, Rowland and Cecil Stanfield, be taken from the plaintiff and given to the petitioner, and that this petitioner be discharged from paying to the plaintiff herein alimony in any amount whatever, and for such other proper and further orders as to the court may seem meet and equitable in the premises, and your petitioner will ever pray."

To this plaintiff filed her response, in which she challenged the sufficiency of the showing made by the defendant to put her upon defense, denied generally and specifically the averments upon which he relied for relief, and set out specifically the following averments:

"She denies that petitioner is the proper person to have the custody of said children, and she says it would be to their detriment to turn them over to him. She alleges that she is reliably informed, and she believes, that if petitioner obtains custody of said children, he will turn them over to his father. who now resides in Missouri. She says that said petitioner's father is an excellent man, and well able to provide for said children, but that he is a man advanced in years, and has married, in the last year, a young woman, and it is doubtful whether or not these children could get along at the home of the said grandfather. She believes that the only object in petitioner wanting his father to have said children is so that he will look after their wants and necessities, and will buy them what they need, and thus take this much burden off of petitioner. She alleges the facts to be that no grounds have arisen, since the granting of the decree herein awarding her the said children, which would justify the court in changing the custody of the said children. She alleges that the petitioner is an immoral man, and not fit to have the raising of children, that the woman whom he alleges he married is not a woman of good habits, and that she and petitioner quarreled frequently while they

resided in Vinita, and their acts became highly disreputable, and it would be unwise and unjust to allow petitioner to try to raise said children and have their care and custody. She alleges that said children reside with her, at her mother's home ·in Vinita. They are well housed and fed, and sent to school regularly, and are surrounded by wholesome, moral influences, and are clothed as well as the clothing which petitioner furnishes them will permit; that their affections and ties, both for their mother and their grandmother, are very strong, and it would be injurious ,to them, at their age, to sever them from these ties; that they are fully satisfied with their present condition, and as Rowland is at the age to choose whom he desires' to have for his guardian, it would be only just to him to consult his wishes before any change of his custody is made. This respondent states, further, that she has very little property, and no income worth speaking of, except the alimony from petitioner; that she is almost wholly dependent upon it, and she believes it not more than fair and just to her that the court order petitioner to pay his alimony in arrears before he be allowed to ask for a release, or even reduction of the same. She states that at the time she was divorced from petitioner he was United States attorney for the Northern District of the Indian Territory,with a salary of $4,000 per year; that he still holds that office. and, besides, he owns the greater part of the oil interests in 400 acres of valuable oil lands in the Cherokee Nation. Ind. T., which is set out in respondent's petition, filed in October, 1906, asking for a segregation of the same to pay alimony in arrears. And she alleges that it is within the capacity and ability of petitioner to perform the orders of the court in regard to alimony and the maintenance of his said children."

The showing of both parties is verified by their affidavits. At the time the same was set for trial the hearing was continued over a day, at the instance of the plaintiff. and in the meantime it is shown that she took the children and departed from the jurisdiction of the court with them, being represented at the hearing by her attorneys. The court on the hearing entered a judgment setting aside and rescinding its former judgment, and awarding to the defendant the custody of the children without the reservation of any right to see or visit them in plaintiff, and relieving him of the payment of any alimony whatever, either that which

had accrued, or which would accrue, under its former judgment, but providing that, if plaintiff appeared in court with the children on a proper showing, it would make a further order respecting alimony, and, upon her failure to so appear with the children within five days thereafter, that she should be subject to be attached as for contempt of court. From this judgment appeal was taken to the United States Court of Appeals of the Indian Territory, and the same is now before us for our consideration, by virtue of the succession of this court under the terms of the Enabling Act (Act June 16, 1906, c. 3335, 34 Stat. 267.)

*George E. McCulloch,* for appellant.

*Wm. P. Thompson,* for appellee.

DUNN, J. (after stating the facts as above). The exceptions taken to this judgment by the appellant cover substantially the following grounds: First, that the trial court erred in awarding to appellee herein, upon his petition and evidence, the care and custody of the two minor children; second, that the court erred in rendering judgment relieving defendant from all obligations to pay alimony; third, that the court erred in holding plaintiff in contempt by reason of her absenting herself with the children from its jurisdiction. Generally speaking, the objections taken by the plaintiff to this judgment are that the court was not authorized by the pleading or evidence, to set aside the decree that had been rendered in the case, nor was it authorized to punish, as it did, plaintiff for contempt. These two general subdivisions in our judgment will cover the objections taken to this judgment.

From the defendant's pleading it will be noticed that he complains of the conduct of his former wife, averring that she had denied him the right to see his children, had informed his father that defendant would not furnish them with clothing, was incurring expenses, wilfully and needlessly, for the said children; that she had made their and her own home with her mother, who with her brother had refused to pay a note that they induced him to make with them in the sum of $300; that the mother was not

a fit person to properly care for the said children; that on March 22, 1906, defendant was married to Miss Mary Louise Smith at the city of Memphis, Tenn.; and that plaintiff had caused trouble between defendant and his new wife, which had made his wife sick and dethroned her reason, and as a direct result of her misconduct, defendant had been humiliated and suffered misery, and as a result at one time lost 25 pounds of weight in 12 days; that since the decree of divorce she had intentionally interfered with the business of defendant, thereby causing him loss of property.

On the hearing of the case to support his claim to the care and custody of the children as against his wife, and on which reliance is placed to set aside the former decree granting their care and custody to the plaintiff, he sought to show three things: That his wife refused to permit him to see them or visit them, in accordance with the terms of the decree, that she refused to permit them to visit him, and that she had not supplied them with a home suitable to their needs. In support of the first proposition he testifies that he had permitted plaintiff to keep a cow which belonged to him, and that, on its getting out on one occasion, and on his requesting plaintiff to have a man secure it, for which he would pay, she flew into a rage and became abusive of him; and stated that neither of the children would see him again, or have anything to do with him, and that since that time she had not allowed the children to speak to him or had he been allowed to see them. He does not testify that prior to that time he had made any effort to see them, nor that since that time he had made any effort to see them further than will be presently noticed. The decree gave him the right to visit the children at such reasonable times as would be agreeable to the plaintiff, and to have the children visit him. On this it seems to us, if he desired a change of the custody of these children because of his being denied the right of visiting them, he certainly ought to show the time, or times, when he had made an effort to visit them which was unsuccessful through the fault of plaintiff. In the absence of such showing of fact, no judg-

ment denying the mother their possession for this reason could be sustained; neither does he show in any particular wherein these children were denied the right or privilege of visiting him. It is true that he reads in evidence a letter, which he wrote to his oldest son some 15 months after the divorce was granted, in which he asked him to bring his younger brother and come and see him, and this stands alone up to that time as the sole and only invitation in this record of this father to his sons to visit him. Thereafter, and between the time of the writing of that letter and the giving of his evidence, a period of a little over a month, he had a conversation with this same son, in which he testified that he (the son) was apparently offish; that he asked him if he was mad at his father, to which the boy replied that he was. He then asked him what he was mad at him for, and he answered that it was due to the manner in which he had treated his mother. He then asked him if he would come down and see him on the morrow, and bring his younger brother with him, which he agreed to do, but did not; that prior to this he had displayed affection for his father. It will be noted that the mother is in no way whatever connected with this testimony or conduct of this child, or these children. This conversation took place probably in January or February, 1907. But the mother cannot be held responsible for this feeling, with no evidence whatever connecting her with it. From his own evidence the condition seems to have been brought about by his, and not the mother's conduct. He states he never applied to the court in order to enforce either the right to visit or otherwise see the children.

Nor can we consent that the evidence in this case shows that the mother has not given the children a good home. She lived with her mother, Mrs. Hughes, who defendant says is a very excellent moral woman, and who had formerly lived at defendant's house, and who he states had looked after his own, and the wearing apparel of the children while there. When asked as to whether or not the children had a good home, he testified: "I have no

knowledge, for the reason that I am not permitted to see them, have stayed away at the special instance and request of the mother of these children." Hence there is no evidence that the home provided by the mother for the children is not such as .it should be. The defendant himself testifies that he desires to have the children awarded to him, not that he has any home to which he can take them, as he and his second wife have separated, but that he desired to send them to a farm in Missouri to be kept by his aged father and his (the father's) recently married wife.

Certainly it occurs to us, from a close reading of this evidence, that there is no testimony whatever to support either of the propositions that the father could not have seen these children had he really desired to do so, or that they would not have been permitted to visit him had he really manifested an earnest desire to have them do so, or that they were not supplied with a good home under the provisions made for them by their mother. He testifies to a number of general conclusions in reference to the children and the home provided by the mother. He supports his second motion by the affidavits of a number of people, who swear to the conclusion that the mother is incompetent to have the care, custody, and control of the children, and that the best interests of the children require that their custody and control be given to their father, and other conclusions of similar character, but no facts are stated, nor is it shown, that these witnesses could not have been procured to testify on the hearing of the cause had they been desired.

It is a rule laid down by practically all of the courts that, where there has been no change in the condition of affairs from what they were at the time of the rendition of the decree making the award of the children, a court will not arbitrarily take them from one parent or from one guardian, and deliver them into the hands of another parent or guardian. Especially will this be true where no material facts are disclosed, at the time the application is made, which were unknown, or which could not have been readily ascer-

tained, at the time the decree was rendered. Such appears to be the general rule applicable in such cases, and is thus stated:

"A modification of the decree awarding custody of the children will not be made unless it be shown that the circumstances of the parties have changed, or unless material facts are disclosed which, at the time the decree was rendered, were unknown and could not have been ascertained with reasonable diligence." (14 Cyc. p. 811.)

The reason for such a ruling is apparent on its face. If the decree is not in accordance with good conscience and equity and the best interests of the child when made, then application should be made for its review at the time in the court where taken; and, on its refusal to reverse its decree, then appeal should be resorted to, but an application at a subsequent term of the same or another court for the modification of the decree cannot be used to take the place of an appeal. *Cole v. Cole,* 142 Ill. 19, 31 N. E. 109, 19 L. R. A. 811, 34 Am. St. Rep. 56; *Daugherty v. Daugherty,* 71 Ill. App. 301; *Warren v. Warren,* 101 Ill. App. 308.

It appears that on February 13, 1907, the day to which this cause had been adjourned, the plaintiff was unable or did not attend the court, whereupon the court adjourned until the following morning at 9:30 o'clock, for the purpose of allowing plaintiff to attend, and give her testimony. At the time to which the court was adjourned attorneys for plaintiff appeared, and advised the court that plaintiff had taken the two children and left the jurisdiction of the court, and that they were not advised as to her intention about testifying in the case, whereupon the court rendered its judgment, basing it "upon the evidence, heretofore submitted upon the part of plaintiff and defendant, upon the motion of the defendant for custody of the children and modification of the order as to alimony, and upon the response of plaintiff, and the default of the plaintiff in failing further to appear at the time set for the giving of her testimony and her reported flight with said children." Now, under the exceptions taken, the question arises, Would the court under these facts be exercising a

reasonable judicial discretion in punishing the plaintiff for her contempt, if such it were, by taking from her the custody of these children and placing it with the father? In our judgment it would not. In the first place, the decree which is modified made no specific requirement that the plaintiff should keep the children within the jurisdiction of the court, nor that she should remain there herself, so that by her absenting herself with the children she violated none of the specific terms thereof, and no citation of any kind had been served on her. There was no evidence showing that any controlling condition, which existed at the time the same was entered entitling her to the custody of the children, had become changed or modified by her subsequent conduct, and where there is no substantial reason affecting the best interests and the welfare of the children for the change, certainly a court cannot arbitrarily make it to punish their custodian for either directly or impliedly violating its orders. The custody of the child ought not to be made the medium through which its parent is punished. Its welfare ought to be, and is, of paramount importance. The conduct of its parent towards the court ought to be considered as of absolutely no weight in the determination by that court in whom it shall place the custody of the child. The defendant in his testimony specifically confesses that he has no home to which he may take these children, and testifies that it is his deliberate purpose, on getting custody of them, to remove them from the jurisdiction of the court and to keep them at his father's home in the state of Missouri. Under these circumstances in our judgment there is nothing for this court to do but to set aside that portion of the modified or new decree.

On the question of whether or not it was the duty or was within the power of the court to relieve the defendant of the payment of alimony decreed plaintiff, we will say that the same rule obtains as is noted above. In the absence of a showing of a change of the financial condition of the party charged, or the remarriage, or some other similar and controlling circumstances occurring in

the life of the party benefited, the decree allowing alimony ought not be rescinded or annulled.    After the divorce the parties go into the world as strangers to each other, and generally even the adultery of the wife, except possibly under special conditions not involved in this case, will not relieve the husband of the payment of alimony in accordance with the decree.  Keezer on Marriage and Divorce, § 320; *Cole v. Cole*, 35 Ill. App. 544. See, also, *Cole v. Cole*, 142 Ill. 19, 31 N. E. 109, 19 L. R. A. 811, 34 Am. St. Rep. 56; 14 Cyc. p. 788.

Nor generally had the court jurisdiction, in the absence of fraud or mistake, to change or modify the alimony decreed for the aggression of the husband, which is adjudged to the wife in accordance with an agreement of the parties entered into previous to such decree. *Law v. Law*, 64 Ohio St. 369, 60 N. E. 560; *Henderson v. Henderson*, 37 Or. 141, 60 Pac. 597, 61 Pac. 136, 48 L. R. A. 766, 82 Am. St. Rep. 741; *Storey v. Storey*, 125 Ill. 608, 18 N. E. 329, 1 L. R. A. 320, 8 Am. St. Rep. 417. It will be observed that the contract entered into and the decree contained the provision that the defendant shall pay to the plaintiff as alimony $150 per month until such time as she shall remarry, and that in addition thereto that he shall bear the expense incident to any sickness, if any should arise; "that in the event of accumulation of greater wealth or property interest upon the part of the defendant herein, the said sum of alimony herein provided may be increased by the court in keeping with the financial condition of the defendant, provided the plaintiff remain single and unmarried." The plaintiff has remained single and unmarried, but the defendant contends that it was his understanding, at the time the contract was entered into, that she was to become married shortly after her divorce, and that by her failing to do so he was entitled to have the decree modified and her denied alimony.  When asked as to what the understanding was in reference to the time the alimony was to continue, he said, "My recollection is that there was no specified length of time, further than that she was going to be married,"

and that the $150 a month was to last until that time but that he understood that she would marry not later than six months, and that it was not written in the contract to save plaintiff from humiliation. At the time of the hearing, he still occupied the position of United States attorney for the Northern District of Indian Territory, and was continuing to draw his salary of $4,000. per year, and in our judgment neither the facts testified to nor the power of of the court to punish the plaintiff for contempt justified or warranted the setting aside of the decree made upon the contract granting plaintiff alimony.

The cause is accordingly reversed and remanded to the district court of Craig county, with instructions to set aside the decree of the court modifying the decree rendered in the divorce suit between these parties, reinstate said decree, and take such further action in the premises, in accordance with this opinion, as the facts at this time warrant.

All the Justices concur.