## Pauley v. Pauley.

Oct. 13, 1939.

A. W. Mann and S. S. Willis for appellant.

E. Poe Harris and R. W. Becker for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The parties hereto—appellant the husband and plaintiff below, and appellee the wife and defendant below—were married in 1922. On August 20, 1936, plaintiff filed in the Boyd circuit court his petition against defendant seeking an absolute divorce from her, upon the ground of cruel and inhuman treatment followed by separation. Issue was made by defendant's answer and the parties proceeded to prepare the case for final submission. On November 10, 1936, when the case occupied that status, the parties entered into a written agreement —duly executed by both—settling their property rights, including alimony to be paid by the husband to the wife throughout her life, or until her marriage to another

man, if the latter should happen. The alimony payment so agreed upon was a monthly amount of $40 payable one-half on the first and one-half on the fifteenth of each month thereafter. Other stipulations concerning additional property rights with reference to division of personal property and abstention by each from incurring indebtedness against the other were contained in the writing. It was also expressly agreed that each of the parties relinquish all of their interest arising from the marital relation in and to all other property of either, owned or thereafter acquired. Finally the agreement said: "Should there hereafter be entered herein a judgment of divorce, then this order is to be and become a portion thereof as though set out at length therein and the provisions of this order with respect to the payment of alimony may be enforced by rule or other appropriate process of this court." The contract after being signed by plaintiff and defendant was witnessed by A. W. Mann and R. W. Becker and filed in the cause.

On November 21, 1936, preparation of the case was finished and the cause was submitted for judgment, when the court sustained the prayer of plaintiff's petition and granted him an absolute divorce. It then referred in its judgment to the written contract supra, and decreed that "said agreed order is adjudged to be, and is hereby made a part of this judgment as though set out at length herein, and this cause is now stricken from the docket."

Thereafter plaintiff paid to defendant the agreed and judicially approved monthly amounts for some ten months or more when he ceased to do so; whereupon defendant asked for and obtained a redocketing of the case in the court and filed therein her affidavit manifesting the fact of defendant's refusal to pay, and asked for a contempt citation against him to show cause why the rule should not be made absolute and that he be required to continue the payments, or be punished for contempt upon failure to do so. In response thereto plaintiff admitted his failure and refusal to make the payments indicated but attempted to justify it upon the ground "that during the month of July, 1937, he learned that the defendant, Myrtle Pauley, was living a life of licentiousness and debauchery with one or more men not her husband in and about the city of Charleston, Kanowho County, West Virginia; that he investigated such information and rumor thoroughly and became convinced of

the truth thereof; and he states that he should not, in equity and good conscience, be required to support the defendant and her paramours who receive the benefit of money earned by this plaintiff at hard labor in a life of idleness, lewdness and debauchery." Defendant demurred thereto, which the court sustained, and plaintiff declining to respond further, an absolute rule, finding him guilty of contempt, was entered, to which he excepted, followed by this appeal prosecuted by him to this court.

The precise question, therefore, for our determination is: Whether a judgment granting an absolute divorce which has become final by striking the case from the docket of the court rendering it, and which adjudged monthly payments of alimony to the wife (with no reserved right for modification, or where no maintenance of infants is involved, since the parties hereto had no children) which had been previously fixed by agreement of the parties in a contract settling their property rights and in consideration of the relinquishment of all rights of each party in and to the property of the other acquired by virtue of the marital relation, and which agreement was incorporated in the judgment by direction of parties—is subject to modification after the adjournment of the term of court at which the judgment was rendered for any other cause than changed financial condition of the husband, conceding that it might be done in that instance?

An examination of the authorities—both texts and court opinions—reveals considerable contrariety and confusion upon the question of the right of the court rendering such a judgment to modify it at a future term upon redocketing the case for that purpose, as will be seen from consulting these authorities: 17 Am. Jur. 498, Section 652; Weber v. Weber, 153 Wis. 132, 140 N. W. 10ɔ2, 45 L. R. A., N. S., 875 and 876, Ann. Cas. 1914D, 593; 71 A. L. R. 726, to and including 728; 19 C. J. 274, Section 620, and page 277, Section 628; also page 340. They compose but a partial list of cases and texts that might be made, manifesting apparently contradictory holdings of the courts on the question. But a close analysis of them demonstrates that, after all, the apparent confusion is superficial and to a large extent unreal, arising from the fact that in the particular jurisdiction some element of the *precise* question supra, was absent, or some other fact existed materially bearing

upon the question and supporting the particular opinion or judgment rendered. By way of illustration—some of the cited authorities, and cases referred to in the courts' opinions, were where statutes existed conferring the right; or where the judgment sought to be modified expressly reserved such rights; or the judgment had not become final at the time the modification motion was entered; or it was only from bed and board and did not grant a divorce a vinculo; or where the allowance was made for support of infant children (the custody of whom was given to the wife, or it was made for her jointly with them), or perhaps for other recognized reasons. But, whatever might be the true rule to be gleaned from such foreign jurisdictions and authorities, this case will have to be governed by the rule we have adopted and approved as based on the particular facts of our precise case.

There was presented to us for determination in the very recent case of Boehmer v. Boehmer, 259 Ky. 69, 82 S. W. (2d) 199, 200, the sole question of the right of a divorced wife, by this character of proceeding, to collect *past* due and unpaid allowances from the payment of which the trial court had released the husband because of the wife's remarriage. We reversed the judgment because of our conclusion—fortified by cited domestic cases—that the character of judgment therein rendered (monthly payment of alimony) vested the wife with an absolute right thereto with respect to all *unpaid* installments accruing *before* the alleged forfeiting act on her part, and which in that case was her remarriage. Therefore, we directed a judgment to be entered for the aggregate amount of such *past due* and unpaid installments, notwithstanding the marriage of the wife before she proceeded to enforce their payment. In the course of that opinion we said: "The rule that, where the parties during the pendency of an action for divorce enter into an agreement settling their property rights and providing for the payment of alimony either in a lump sum or monthly payments, and a judgment is rendered carrying the agreement into effect, the court is without power after the expiration of the term to revise the alimony because of changed finances, Renick v. Renick, 247 Ky. 628, 57 S. W. (2d) 663, is subject to two exceptions: (1) Where the agreement provides for modification, Fisher v. Fisher, 237 Ky. 823, 36 S. W. (2d) 635; (2) where the court retains control of the action, Par-

sons v. Parsons, 80 S. W. 1187, 26 Ky. Law Rep. 256." But, since the judgment therein was qualified by this statement: "Until the further order of the court," we upheld the right of the court to modify it upon valid grounds, the modification to take effect from and after their coming into existence, which was the wife's remarriage in that case.

However, it will be perceived from the inserted excerpt from that opinion that where the judgment, based upon the prior agreement of the parties, was absolute and final (without either of the two exceptions set out therein), the court is without authority at a later term to make the modification, even on the ground of changed financial conditions of the husband disabling him to make the payments. That opinion and holding was referred to with approval in the later case of Duff v. Duff, 275 Ky. 367, 121 S. W. (2d) 933, 934. In referring to the court's holding in the Boehmer case we said in the Duff opinion: "However, as is also stated, where a judgment has been rendered carrying out an agreed settlement of property rights providing for payment of alimony either in a lump sum or monthly payments, the court is without power, after the expiration of the term, to revise that judgment unless the agreement provides for a revision or the court retains control over the action. There should also be added an exception as to finality, unless the consent judgment was procured by fraud. McGuffin v. Chapman, 212 Ky. 579, 279 S. W. 987; Keach v. Keach, 217 Ky. 723, 290 S. W. 708. Of course, where the judgment is for a lump sum or its equivalent, without an agreement, the judgment is final unless the case is retained under the control of the court. Scott v. Robertson, 212 Ky. 392, 279 S. W. 625; Jones v. Jones, 216 Ky. 810, 288 S. W. 737; Keach v. Keach, supra; Renick v. Renick, 247 Ky. 628, 57 S. W. (2d) 663."

It, therefore seems clear that this court is committed to the rule that alimony judgments of the precise nature of the one hereinbefore outlined may not be modified by the courts rendering them in the character of proceeding here invoked. Whether or not such relief is available to the complaining spouse by and through an independent action—such as is provided for by Sections 344 and 518 of our Civil Code of Practice—is a question not presented in this case. But, waiving procedural questions, and inasmuch as counsel for both

sides devote much time and space in their briefs to a discussion of the question as to whether the charges preferred against defendant in plaintiff's response to the rule issued against him is sufficient in law to relieve him from future payments of the adjudged alimony, we have concluded to briefly discuss and determine it. The cited text in 17 C. J. on the precise point says: "In the case of an absolute divorce, the subsequent misconduct of either of the parties does not ordinarily constitute ground for either reduction or increase in the amount of alimony award. Thus in such cases no modification of the decree will be granted in the absence of statutory power to grant the same." It then continues by pointing out a distinction as to divorces a mensa et thoro, or where other aforementioned qualifying facts appear, and then says: "Where the marital tie has been absolutely severed, there is neither reason nor authority for holding that either party has the right to complain of the subsequent conduct of the other. The wife may owe a duty to society, of which the husband is a member, to lead an exemplary life; but her allowance has been fixed upon the state of facts existing at the time of the rendition of the decree, by the determination of what was then just and equitable, in view of the property rights of each."

The text in 19 C. J. 277, is in harmony with that excerpt when it says: "Ordinarily the misconduct of the wife, even her adultery occurring after absolute divorce, does not justify the vacation or reduction of a decree allowing her permanent alimony," etc. Cases cited in the notes to both excerpts are in accord therewith, some of which are: Alexander v. Alexander, 9 Mackey 552, 20 D. C. 552; Cole v. Cole, 142 Ill. 19, 31 N. E. 109, 19 L. R. A. 811, 34 Am. St. Rep. 56; Sloan v. Cox, 4 Hayw., Tenn., 75; Cariens v. Cariens, 50 W. Va. 113, 40 S. E. 335, 55 L. R. A. 930, and Stanfield v. Stanfield, 22 Okl. 574, 98 P. 334. There are cases to the contrary, an illustration of which is Weber v. Weber, 153 Wis. 132, 140 N. W. 1052, 45 L. R. A., N. S., 875, Ann. Cas. 1914D, 593. But such contrary holdings are vastly in the minority numerically, if not also less supported by reason and logic, since, as said by the court in the Cariens case supra [50 W. Va. 113, 40 S. E. 336, 55 L. R. A. 930]: "When a decree of absolute divorce gives alimony, the subsequent sexual intercourse by the late wife with other men is no ground for discharging the man from

such alimony, because after such decree the woman is no longer wife, no longer owes any duty of purity to the husband, and breaks no duty to him by her misconduct, however gross.''

Also it was said by the Oklahoma court in the Stanfield case [22 Okl. 574, 98 P. 340]: ''In the absence of a showing of a change of the financial condition of the party charged, or the remarriage, or some other similar and controlling circumstances occurring in the life of the party benefited, the decree allowing alimony ought not be rescinded or annulled. After the divorce the parties go into the world as strangers to each other, and generally even the adultery of the wife, except possible under special conditions not involved in this case, will not relieve the husband of the payment of alimony in accordance with the decree.''

Further elaboration, with more extended discussion of the holdings of the various courts, would strengthen the views and holdings referred to, but it is deemed unnecessary to devote time or space for that purpose, since they are practically unanimous in approval of the reasons stated in the Cariens and Stanfield opinions, and with which we also coincide. They are—that after the rendition of the absolute divorce decree, and which becomes final by adjournment of the term, the parties are no longer husband and wife, and their legitimately acquired rights, as founded upon their agreement and later approved by the court unconditionally, absolutely fixes their rights and obligations. Neither the husband nor the court thereafter remains or becomes any sort of guardian for the wife with supervisory power and authority over her conduct—moral or otherwise—except insofar as it might create a breach of the criminal law for which she would be liable to punishment by the court if found guilty under a duly presented charge. The adjudged payments under such a decree after it becomes final becomes the absolute property of the wife to be spent by her as she pleases, and which right is in no way conditioned upon her continuing to live an upright and exemplary life.

Wherefore, for the reasons stated, the judgment is affirmed.