Alfred P. ALIBRANDO, Appellant,

v.

Joyce A. ALIBRANDO, Appellee.

No. 10987.

District of Columbia Court of Appeals.

Submitted Dec. 16, 1976.

Decided April 11, 1977.

---

Samuel Green and Allan G. Slan, Washington, D. C., were on the brief for appellant.

Barry H. Helfand, Rockville, Md., was on the brief for appellee.

Before KERN, NEBEKER and YEAGLEY, Associate Judges.

PER CURIAM:

Appellant, the former husband of appellee, appeals an order denying a motion to terminate alimony. The ground for the motion and for the appeal is the fact that

the former wife now lives with another man in Maryland. Appellant's argument is that such a relationship forms a basis to terminate alimony. For the reasons contained in the opinion and order of the trial court, incorporated herein as an Appendix, we affirm the order.

*So ordered.*

## APPENDIX

### SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### DOMESTIC RELATIONS BRANCH

Family Division

CIVIL ACTION NO. D 3616–69

**ALFRED P. ALIBRANDO, PLAINTIFF,**

v.

**JOYCE A. ALIBRANDO, DEFENDANT.**

ORDER

On December 4, 1969, the plaintiff, Alfred Alibrando filed in the then District of Columbia Court of General Sessions, Domestic Relations Branch, a complaint for absolute divorce on grounds of desertion for one (1) year. A judgment of absolute divorce was granted Mr. Alibrando on February 26, 1970, by the court from the defendant, Joyce Alibrando, thus dissolving the parties' marriage of seventeen (17) years.

The terms of this divorce provided alimony for the wife of $50.00 bi-weekly ($100.00 per month). Subsequent to the initiation of the complaint for divorce, but prior to the entry of the divorce decree, the parties entered into a separation agreement which, *inter alia,* also provided for alimony of $100.00 per month for the wife.

On November 14, 1975, Mr. Alibrando filed a motion to terminate alimony, and on January 16, 1976, Mrs. Alibrando filed an opposition thereto. Mr. Alibrando's sole ground for seeking termination of alimony was his assertion that Mrs. Alibrando, while receiving the alimony payments, has been living in open and notorious adultery,[1] and "he should not be made to pay alimony to a divorced wife guilty of immoral conduct".

At the hearing on Mr. Alibrando's motion evidence was adduced as follows:

1. that Mrs. Alibrando is presently living near Myersville, Maryland and is not now married;

2. that she lives at this home with a Mr. Winston Burse;

3. that she and Mr. Burse have lived together for approximately three (3) years;

4. that she and Mr. Burse have had sexual relations over this period;

5. that Mr. Burse does not contribute to Mrs. Alibrando's support, nor she to his;

6. that Mrs. Alibrando and Mr. Burse do not own property together or share a checking account;

7. that the telephone for this residence is listed to Mrs. Alibrando; and

8. that Mrs. Alibrando does not hold herself out as married to Mr. Burse.

The issue for determination now before this court is whether or not permanent alimony awarded after an absolute divorce can be terminated based solely on the misconduct of the party receiving the alimony.

■ At the outset it should be noted that the fact that Mr. Alibrando initiated and obtained the divorce between the parties is not a controlling factor on the question of the later termination of alimony. Title 16, Section 913 of the District of Columbia Code specifically holds that "[w]hen a divorce is granted on the application of the husband, the court may require him to pay alimony to the wife, if it seems just and proper."

■ There can be no question, nor does Mr. Alibrando attempt to raise the issue, that Mrs. Alibrando has a right to receive the alimony as initially ordered on February 26, 1970. Mrs. Alibrando's rights to the alimony derive from her contractual agree-

1. The court notes that the misconduct cited is not adulterous. Neither Mrs. Alibrando nor her paramour, Mr. Burse, was married, either to each other, or to other parties. At most then, this conduct can only be labeled fornication and not adultery.

ment with Mr. Alibrando and more importantly from the divorce decree itself. The initial award of alimony was fully consistent with the purposes of alimony as outlined by case law in the District of Columbia. "Alimony is not intended as a penalty to be imposed upon the husband nor as compensation to solace the wife . . . [i]ts objective is to provide reasonable and necessary support to the wife." *McEachnie v. McEachnie*, D.C.App., 216 A.2d 169, 170 (1966) (footnote omitted). It has also been held that "[t]he policy underlying the alimony statutes . . . is to insure that where the wife is entitled to support, she will receive it, and not become a public charge." *Wheeler v. Wheeler*, 88 U.S.App. D.C. 193, 195, 188 F.2d 31, 33 (1951).

 The courts in the District of Columbia have uniformly agreed that "[t]here is no fixed set of rules or formula for determining permanent alimony and any award must be made only after careful study of the particular facts of each case." *McEachnie v. McEachnie, supra*, at 170. There is agreement, however, that there are certain primary factors which should serve as an objective beginning when confronting the question of permanent alimony. These factors include, *inter alia* :

> . . . the duration of the marriage, the ages and health of the parties, their respective financial positions, both past and prospective, the wife's contribution to the family support and property ownership, the needs of the wife and the husband's ability to contribute thereto, and the interest of society generally in preventing her from becoming a public charge.[2]

[2] *Quarles v. Quarles*, 86 U.S.App.D.C. 41, 179 F.2d 57 (1949); *Mazique v. Mazique*, D.C.App., 206 A.2d 577 (1965); aff'd D.C.Cir. [123 U.S. App.D.C. 48], 356 F.2d 801, January 17, 1966; *Cole v. Cole*, D.C.App., 193 A.2d 76 (1963). [*McEachnie v. McEachnie, supra* at 170; footnote in original.]

 The factors as outlined above, which relate to the initial determination of alimony, obtain increased significance when addressing questions concerning the termination of alimony, for it is these factors which bear most heavily upon the question of changed financial conditions. The courts of the District of Columbia have consistently held that "where the allowance becomes unduly burdensome, the husband is free to seek a suitable adjustment by making a proper showing of a change in circumstances." *Tinney v. Tinney*, D.C.App., 209 A.2d 927 (1965). *See also Butts v. Butts*, D.C. App., 192 A.2d 294 (1963); *Richardson v. Richardson*, 93 U.S.App.D.C. 76, 207 F.2d 133 (1953). Additionally, the District of Columbia Court of Appeals recently affirmed this principle when it held that:

> It is well settled in this jurisdiction, as in others, that a support [alimony] decree can be modified only upon a showing of a substantial and material change in the conditions and circumstances of the involved parties since the entry of the decree. The burden of demonstrating the required change of circumstances rests upon the party seeking the modification. . . . [*Tydings v. Tydings*, D.C.App., 349 A.2d 462, 463 (1975).]

The question presented by this case is one of first impression in the District of Columbia. No case law exists on whether a divorced woman terminates her right to alimony from her former husband when she lives openly with another man without the benefit of marriage. Decisions in other jurisdictions are divided on this issue.

One view is that gross misconduct of an ex-wife after entry of judgment may, in and of itself, justify a modification or termination of alimony payments. *See Taake v. Taake*, 75 [70] Wis.2d 115, 233 N.W.2d 449 (1975); *Rubisoff v. Rubisoff*, 242 Miss. 225, 133 So.2d 534 (1961); *Martens v. Martens*, 211 Minn. 369, 1 N.W.2d 356 (1941); *Lindbloom v. Lindbloom*, 180 Minn. 33, 230 N.W. 117 (1930); and *Weber v. Weber*, 153 Wis. 132, 140 N.W. 1052 (1913). Cf. *Grant v. Grant*, 52 Cal.App.2d 359, 126 P.2d 130 (Dist.Ct.App., 1942); *Coggins v. Coggins*, 289 Ky. 570, 159 S.W.2d 4 (Ct.App., 1942); *Wilhelm v. Wilhelm*, 201 Minn. 462, 276 N.W. 804 (1937); *Haritos v. Haritos*, 185 Wis. 459, 202 N.W. 181 (1925); and *Harper v. Murray*, 184 Cal. 290, 193 P. 576 (1920).

The rationale underlying these cases is that it would be unconscionable and against public policy to force a husband to support his divorced wife "in idleness and adultery". *Rubisoff v. Rubisoff, supra* [242 Miss. 225, 133 So.2d] at 538. Thus, if the wife

. . . deliberately chooses a life of shame and dishonor . . . the court may make the misconduct of the wife the ground for cutting off all alimony, or for reducing the same as may, in its discretion, seem just and equitable under all the circumstances of the case. [*Weber v. Weber, supra* [153 Wis. 132, 140 N.W.] at 1055.]

However, other cases hold that the unchastity of a former wife, subsequent to a divorce and the allowance of alimony, does not by itself justify the termination or modification of alimony payments, although it is a factor to be considered in appropriate circumstances. *See Garlinger v. Garlinger,* 137 N.J.Super. 56, 347 A.2d 799 (Super.Ct. App.Div., 1975); *Sheffield v. Sheffield,* 310 So.2d 410 (Fla.Dist.Ct.App., 1975); *Hall v. Hall,* 25 Ill.App.3d 524, 323 N.E.2d 541 (App.Ct., 1975); *Byrd v. Byrd,* 252 Ark. 202, 478 S.W.2d 45 (1972); *Bissell v. Bissell,* 291 Minn. 348, 191 N.W.2d 425 (1971); *Daniels v. Daniels,* 82 Idaho 201, 351 P.2d 236 (1960); *Bowman v. Bowman,* 163 Neb. 336, 79 N.W.2d 554 (1956); *Christiano v. Christiano,* 131 Conn. 589, 41 A.2d 779 (Sup.Ct. Err., 1945); *Pauley v. Pauley,* 280 Ky. 66, 132 S.W.2d 512 (Ct.App., 1939); *Suozzo v. Suozzo,* 16 N.J.Misc. 475, 1 A.2d 930 (Ct.Ch., 1938); *Hayes v. Hayes,* 220 N.Y. 596, 115 N.E. 1040 (Ct.App., 1917); *Stanfield v. Stanfield,* 22 Okl. 574, 98 P. 334 (1908); *Cariens v. Cariens,* 50 W.Va. 113, 40 S.E. 335 (1901); and *Cole v. Cole,* 142 Ill. 19, 31 N.E. 109 (1892). Cf. *Lott v. Lott,* 213 Ga. 559, 100 S.E.2d 170 (1957) and *Smith v. Johnson,* 321 Ill. 134, 151 N.E. 550 (1926). ▇▇▇ The court believes that this view, considered the majority rule, is based on the more realistic premise that the judgment of absolute divorce absolves the wife of all previous marital obligations. Under this rule, a divorced woman owes no special duty to her former husband to lead a virtuous life. *See Garlinger v. Garlinger, supra* [137 N.J.Super. 56, 347 A.2d] at 802; *Daniels v. Daniels, supra* [82 Idaho 201, 351 P.2d at] 239; *Bowman v. Bowman, supra* [163 Neb. 336, 79 N.W.2d] at 562; *Pauley v. Pauley, supra* [280 Ky. 66, 132 S.W.2d] at 514; *Suozzo v. Suozzo, supra* [16 N.J.Misc. 475, 1 A.2d] at 932; *Stanfield v. Stanfield, supra* [22 Okl. 574, 98 P.] at 340; *Cariens v. Cariens, supra* [50 W.Va. 113, 40 S.E.] at 336; *Cole v. Cole, supra* [142 Ill. 19, 31 N.E.] at 111; and *Smith v. Johnson, supra* [321 Ill. 134, 151 N.E.] at 522. This court agrees with the majority view and is of the opinion that subsequent to the divorce, neither the divorced husband nor the court retains any form of supervisory power over the divorced wife's conduct, moral or otherwise.

▇▇▇ Other cases advocating this position point out that neither of the parties has any special right to complain of the conduct of the other. Thus, just as the failure of the wife to lead a chaste life will afford no ground for depriving her of her alimony as previously fixed, the failure of the husband to conduct himself properly will afford no ground for increasing her award. *See Byrd v. Byrd, supra* [252 Ark. 202, 478 S.W.2d] at 46; *Daniels v. Daniels, supra* [82 Idaho 201, 351 P.2d] at 239; *Bowman v. Bowman, supra* [163 Neb. 336, 79 N.W.2d] at 562; *Christiano v. Christiano, supra* [131 Conn. 589, 41 A.2d] at 782; and *Cole v. Cole, supra* [142 Ill. 19, 31 N.E.] at 111.

▇▇▇ The court considers this view to be more consistent with the public policy considerations which underlie the District of Columbia's alimony laws. One of the considerations served is preventing divorced persons from becoming charges on the public. *Wheeler v. Wheeler, supra* [88 U.S. App.D.C.] at 195, [188 F.2d 31]. The award of alimony is not automatic, and is made only after a careful study of the facts and circumstances existing in each particular case. *McEachnie v. McEachnie, supra* at 170. Because alimony is not intended as punishment, it may be awarded to a wife even though the divorce was granted on the

husband's application [2] and even if the husband successfully proved adultery as grounds for the divorce.[3] Thus, to terminate Alfred Alibrando's alimony payments solely because of his former wife's post-divorce conduct [4] when the same predivorce conduct would not have barred an alimony award would be to ignore the very reason for the original granting of alimony and would be contrary to public policy.

Again, the court emphasizes that the rule in this jurisdiction is that only substantially changed circumstances and conditions of the parties will warrant a modification of a decree of divorce. Thus, in order to reduce or terminate alimony payments, the husband must show a change either in respect to his ability to support his wife or in the wife's need for such support or both. It follows that a modification of alimony must reflect changed needs or changed financial resources and cannot be used to punish the wife for her immoral conduct.

In the instant case, the plaintiff's sole ground for his motion to terminate alimony is that his former wife is "guilty of a course of illicit sexual relations after divorce." Mr. Alibrando contends that solely because his former wife is living with an individual and having sexual relations with him, his alimony payments should automatically terminate.[5] The plaintiff has not shown the court that he is unable to pay the amount previously decreed nor that his former wife has any lesser need for the alimony payments. The fact that Mrs. Alibrando has been living with another man is insufficient by itself to terminate alimony payments and is relevant only to the extent that it may affect the amount of and the necessity for the alimony award.[6] The court agrees fully with the Superior Court of New Jersey, Appellate Division, in its discussion of this issue:

> If it is shown that the wife is being supported in whole or in part by the paramour, the former husband may come into court for a determination of whether the alimony should be terminated or reduced. Similarly, if the paramour resides

2. Title 16, Section 913 of the D.C.Code specifically provides that:
 > When a divorce is granted on the application of the husband, the court may require him to pay alimony to the wife, if it seems just and proper.

 The court restates that this is precisely what occurred in the instant case. Mrs. Alibrando was awarded alimony even though Mr. Alibrando initiated and obtained a divorce on the grounds of desertion for one year.

3. See *Jaffe v. Jaffe*, 74 U.S.App.D.C. 394, 124 F.2d 233 (1941) in which an award of alimony was upheld despite the fact that the husband was granted a divorce on the grounds of adultery.

4. It is significant that the cohabitation of Mrs. Alibrando and Mr. Burse is not in violation of any law within the State of Maryland, the State in which they are residing.

5. Plaintiff cites two cases in his points and authorities in support of his motion: *Haritos v. Haritos, supra,* and *Lindbloom v. Lindbloom, supra.* Yet in both *Haritos* and *Lindbloom* the statements of the court, relied on by him, are merely dicta and are not dispositive of the cases. In *Haritos,* the sole question before the court was whether the parties could amend an alimony provision by contract and the issue of misconduct was not raised or argued by the

parties. The *Lindbloom* court did acknowledge that the subsequent misconduct of the wife may be taken into consideration in a motion to modify alimony, however, it based its affirmance of a reduction in alimony on the husband's changed financial condition. At the hearing on the motion, two additional cases which appeared in the January 27, 1976 edition of the *Family Law Reporter* were cited: *Lang v. Superior Court of Los Angeles County*, 53 Cal.App.3d 852, 126 Cal.Rptr. 122 (1975) and *Latzky v. Latzky*, No. 34407–71 (N.Y.Sup.Ct., decided Jan. 9, 1976), N.Y.L.J., Jan. 9, 1976 at 7. The persuasive impact of these cases is mitigated, however, by the fact that the basis for the current law in both California and New York is expressly statutory.

6. The court notes that the Separation Agreement entered into by the parties in this case states that alimony payments should terminate upon the remarriage of Mrs. Alibrando. The plaintiff, however, did not, and could not have based his argument on the remarriage of his wife since Maryland does not recognize common law marriage. The court realizes that the District of Columbia does recognize common law marriage and an argument of this nature might have some merit if the parties resided here. No ruling is made on this issue at this time.

in the wife's home without contributing anything toward the purchase of food or the payment of normal household bills, then there may be a reasonable inference that the wife's alimony is being used, at least in part, for the benefit of the paramour, in which case it could be argued with force that the amount thereof should be modified accordingly. . . . [*Garlinger v. Garlinger, supra* [137 N.J. Super. 56, 347 A.2d] at 803.]

Plaintiff has failed to prove that either of these two conditions exists in the present case and has also failed to meet his burden of proving changed circumstances.

Because the court concludes that Mr. Alibrando has neither pleaded nor proved a legal reason sufficient to justify a termination of alimony payments, the motion to terminate alimony must be denied.

It should be added, however, that the denial of this motion is based solely on the facts now before the court. This ruling in no way condones cohabitation after divorce, nor does it, in any way, mitigate against the established doctrine that a subsequent remarriage may be a proper basis upon which to terminate alimony payments. The court is merely concluding that in the instant case the plaintiff has not met his burden of showing how this cohabitation has in any way affected the financial situation of the parties.

The court further stresses that it does not intend to condone conduct that may be offensive to persons within the community. However, its obligation here is to implement the legal purposes of post-divorce support and is not to pretend to regulate public morals.

Dated: March 17, 1976

/s/ H. Carl Moultrie, I
 Judge