Ellen DeGRAZIA, Appellant,

v.

Edward DeGRAZIA, Appellee.

No. 98–FM–1205.

District of Columbia Court of Appeals.

·Argued Nov. 23, 1999.

Decided Dec. 16, 1999.

Diane M. Brenneman, Washington, DC, for appellant.

James G. Nolan, Washington, DC, for appellee.

Before SCHWELB, REID, and GLICKMAN, Associate Judges.

SCHWELB, Associate Judge:

Ellen DeGrazia (the wife) appeals from an order of the trial judge terminating the obligation of Edward DeGrazia (the husband) to pay alimony to her. The wife contends that the judge lacked authority to terminate alimony on the basis of the change in the parties' circumstances. We disagree and affirm.

I.

The parties were married in 1949 and divorced in 1970. In the original order of divorce, the trial court ordered the husband to pay the wife $200 per month in alimony.[1] In 1982 the court ordered an increase in alimony to $400 per month and

---

1. The court also ordered the husband to pay $85 per month in child support for each of the couple's five children, for a total of $425.

a corresponding increase in support for the two children who remained minors; three other children had been emancipated.

In July 1996 the husband filed a motion to terminate alimony.[2] On June 24, 1998, following an evidentiary hearing, the trial judge found that there had been a material change in the circumstances of the parties, and that the wife was now wealthier than the husband. The judge discredited contrary testimony by the wife, noting that she had made inconsistent and misleading representations about her financial condition and needs. It was the judge's view that

> considering [the wife's] holdings, only imprudent investments could return her to a position of need for alimony. It would appear that if she reaches such a point, it is she who must pay the price.

Rejecting the wife's request that her right to alimony should not be altogether extinguished, the judge concluded:

> One of the greatest concerns was whether to completely terminate alimony, or simply to keep the door open by imposing a one-dollar per year award. The [c]ourt's research did not show any basis why such [a] door opening approach should be considered. Alimony is intended in "the interest of society generally to prevent a person, wherever possible, from becoming a public charge." *Quarles v. Quarles,* [86] U.S.App. D.C. [41, 42], 179 F.2d 57, 58 (1949). Society's intent however was not that the able spouse be required to guarantee alimony for the rest of the recipient's unmarried life. For example, it would seem an injustice if at a future time Mrs. DeGrazia makes some careless investments that place her in the need for further maintenance, and that society would have to call again on Mr. DeGrazia to support her.

## II.

The wife's principal contention on appeal is that an award of permanent alimony "is for the life of the recipient spouse unless she marries or her former spouse dies." The wife insists that although permanent alimony, once awarded, may be modified or even suspended on the basis of a change in the financial circumstances of the former spouse, it cannot be terminated on that account. The wife has cited no authority so holding, and we are satisfied that the judge acted well within his discretion in terminating the husband's alimony obligation.

Our equitable distribution statute provides that "[w]hen a divorce is granted to either spouse, the court may decree him or her permanent alimony sufficient for his or her support ...." D.C.Code § 16–912 (1997).[3] It further provides that "[a]fter the issuance of a decree of divorce granting alimony and providing for the care and custody of children, the case shall still be considered open for any future orders relating to those matters." § 16–914(a). There is nothing in the statute to suggest that an award of permanent alimony cannot be terminated if the circumstances giving rise to the need for alimony no longer exist. Indeed, § 16–914(a) appears to invest the trial judge with discretion to issue *any* appropriate future order that takes into account changed circumstances.

In *Alibrando v. Alibrando,* 375 A.2d 9, 15 (D.C.1977) (per curiam), we stated that "in order to reduce *or terminate* alimony payments, the husband must show a change either in respect to his ability to support his wife or in the wife's need for such support or both." (Emphasis added.)[4] This statement necessarily presupposes that where a sufficient showing of changed circumstances has been made, the

---

**2.** By this time, all of the parties' children were adults, and child support was no longer an issue.

**3.** *See also* D.C.Code § 16–913 ("When a divorce is granted on the application of the husband or wife, the court may require him or her to pay alimony to the other spouse, if it seems just and proper").

**4.** The *Alibrando* opinion adopts the opinion of the trial judge, Honorable H. Carl Moultrie I. The language that we have quoted was written by Judge Moultrie.

husband's obligation to pay alimony may be terminated. Similarly, in *Kephart v. Kephart,* 89 U.S.App. D.C. 373, 375, 193 F.2d 677, 681 (1951), *cert. denied,* 342 U.S. 944, 72 S.Ct. 557, 96 L.Ed. 702 (1952), in holding that installments of alimony may not be modified or remitted after they have become due, the court stated that, before these installments become due, "Kephart could have applied to the court for a modification or remission of the award of alimony, due to changed conditions or circumstances." Although the precise issue presented in this case was not before this court in *Alibrando* or before the United States Court of Appeals in *Kephart,* we are satisfied that the law as articulated in these decisions applies to this case and supports the judge's authority to terminate alimony here.[5]

The authorities in other jurisdictions are to the same effect. In *McClure v. McClure,* 4 Cal.2d 356, 49 P.2d 584 (1935), a case in which alimony had been terminated on account of a change in the former husband's ability to pay, the Supreme Court of California recognized that the power to terminate liability for alimony should be exercised with caution. *Id.* at 587. Nevertheless, the court explained, "it cannot be said that there are no cases where a permanent termination of alimony liability would be proper." *Id.*[6] *See also Goggans v. Osborn,* 237 F.2d 186, 189 (9th Cir.1956) ("A decree providing for alimony ... may be modified *or terminated* upon the death of the husband, the remarriage of the wife, or a change in the financial condition of the parties.") (emphasis added; footnotes omitted); *Hoops v. Hoops,* 292 N.Y. 428, 55 N.E.2d 488, 490 (1944) (under New York statute, "the court, at any time after final judgment, may *annul,* vary, modify or amend a final judgment for support of [the wife]") (emphasis added); 24 AM. JUR.2d *Divorce and Separation* § 813 (1998) ("The power of a court to modify an allowance of alimony *includes the power to terminate the obligation to pay alimony* in proper cases.") (emphasis added; footnote omitted); 27B C.J.S. *Divorce* § 402, at 280 (1986 & Supp.1999) ("where express or implied statutory authority exists therefor, the court may *vacate* or suspend an allowance of permanent alimony ...") (emphasis added; footnote omitted); Annotation, *Change in Financial Condition or Needs of Husband or Wife as Ground for Modification of Decree for Alimony or Maintenance,* 18 A.L.R.2d 10, 13 (1951) (hereinafter ANNOTATION) ("a substantial change in the needs of a party is a factor of importance in determining whether to increase, decrease, suspend, *or terminate* the payments [of alimony].") (emphasis added).

■ The wife's contrary position is founded upon her insistence that the award of alimony to her was "permanent and life long." In our view, however, she reads too much into the adjective "permanent." "Permanent" alimony is generally so characterized to distinguish it from "temporary" alimony, *i.e.,* alimony *"pendente lite,"* or from other special forms of alimony. *See generally* 27B C.J.S. *Divorce* § 309, at 108–10.[7] It is not designed to continue in perpetuity where the reason for the award has ceased to exist. Indeed, the wife concedes that such an award may be modified, and "[o]rdinarily the stan-

---

5. *Fioravanti v. Fioravanti,* 98 U.S.App. D.C. 23, 231 F.2d 776 (1956), holding that the trial court may "reduce or cancel, at a later date, periodic installments of payments for maintenance as of the date when application for such relief is made," could conceivably be construed as authority for the trial judge's ruling in this case. The opinion is so cryptic and opaque, however, that we hesitate to treat it as controlling.

6. The court held in *McClure* that, once alimony had been properly terminated, it could not be reinstituted. 49 P.2d at 587–88.

7. *Cf. Cunningham v. Lanier,* 589 So.2d 133, 139 (Miss.1991) (Robertson, J., concurring) "Much ink has been spilled over the distinction between so-called permanent alimony ... and lump sum alimony or alimony in gross. We let the tail wag the dog when we start with the labels, not the underlying concepts nor the language being labeled."

dards which govern the determination of the amount to be originally allowed as alimony or maintenance apply when determining the amount to which alimony or maintenance is to be reduced or increased because of a change in the financial condition or needs of the parties." ANNOTATION, 18 A.L.R.2d at 13. If, at the time of modification, the financial condition of the parties would not warrant an initial award of alimony, then the paying spouse's obligation should be extinguished. This result is entirely logical and just; it would surely be irrational to maintain a former husband's obligation to pay alimony in effect even where his wife has become a millionaire while he is living on welfare. This case is not quite so extreme, but the same principle applies.

### III.

For the foregoing reasons, the decision of the trial judge is

*Affirmed.*[8]

---

8. The wife also appears to challenge the trial judge's findings as to the circumstances of the parties. We are satisfied that there is ample evidence to support these findings. *See* D.C.Code § 17–305(a) (1997). We also conclude, contrary to the wife's argument, that the trial judge recognized his discretionary authority to reduce the husband's alimony obligation to a nominal amount, rather than to terminate it, and that he exercised his discretion judiciously.