Anna Suozzo, petitioner,

*v.*

Joseph Suozzo, defendant.

[Decided October 22d, 1938.]

Mr. *Wilbur L. Ross,* for the petitioner.

Mr. *William J. O'Hagan,* for the defendant.

Rogers, A. M.

This is an application to hold defendant in contempt for failure to pay permanent alimony awarded after decree of absolute divorce. The order provided for payment of $7 per week, and it is charged that he has failed to pay since March 29th, 1937, and is in arrears $455.

The defendant counters with a petition to vacate the order for alimony alleging petitioner's remarriage in April, 1937, and alleging adultery since that time.

The applications came on for hearing at the same time upon the return of the orders to show cause granted upon

the petitions, and petitioner objected to defendant's counter application being heard until he had fully satisfied the arrears under the alimony order. Of course, it is the rule that a contemnor of an alimony order will not be heard upon his application for modification, or rescission, until he has satisfactorily settled his default. However, the rule is not without exception. It is addressed to the sound discretion of the court, and may be relaxed where its application would not serve its underlying purpose. The rule may not be invoked to suppress a good defense, nor to accomplish an inequitable purpose.

Assuming the truth of the allegations of the counter-petition, it is in substance a defense to the petition to adjudge defendant in contempt. It has been held under our statute (*Rev. Stat.* 2:50-38) that remarriage of a former wife after her decree for divorce *ipso facto* terminates her right to further payments under her order therefor in that on application of the former husband the court must vacate such order and hold it ineffectual from the date of remarriage. *Hauenstein* v. *Hauenstein* (Docket 57, page 92); *Rothenberg* v. *Rothenberg* (Docket 76, page 621).

Certainly, to compel the former husband to settle the arrears before hearing the counter-application would be unjust and so, even though defendant's previous conduct toward the order shows unwillingness to obey. Furthermore, in this matter the petitioner instituted the proceeding. The defendant brought his application in response to it. To conclude the applications together is expeditious and not harmful to petitioner. Under the circumstances the objection raised is without merit.

Upon the oral hearing defendant offered no proof that petitioner had ceremonially remarried. The evidence submitted bears wholly upon petitioner's cohabitation with Louis Greenberg and their reputation of marriage. Though I am satisfied the proofs show that petitioner and Greenberg engaged in sexual intercourse during July and August, 1938, the evidence of an existing marital relationship is far from conclusive. *Maxwell* v. *Maxwell, 98 N. J. Eq. 493; 131*

*Atl. Rep. 215.* The lack of evidence of a ceremonial marriage and the failure to establish clearly and convincingly a marital cohabitation and marital reputation warrant holding that defendant has failed to sustain these allegations essential under the statute for the relief asked.

It is urged that petitioner, by illicit relationship with Greenberg, has forfeited her right to alimony from defendant and that the order may be justly vacated. No cases are cited in support of this contention, and so far as I have been able to discover this question has not been alluded to in any reported opinion in this state. The authorities I have carefully examined appear to hold to the contrary in all cases of absolute divorce under statutes silent upon any such limitations on alimony. See *19 C. J. 277* ¶ *628,* and footnotes and annotations thereto; *45 L. R. A. (N. S.) 875.* The court of appeals of New York so held in *Hayes* v. *Hayes (1917), 220 N. Y. 596.*

Counsel cites my memorandum filed in this cause on a previous application for rescission of the alimony order as authority on this application for vacating the order upon the ground of sexual misconduct. The former application was denied because the charges were not sustained. The discussion in the memorandum of this question is clearly *dicta.* A more careful consideration of this subject now leads me to the conclusion that as a matter of law, if not logically, unchastity of a former wife is not a defense to her right to alimony after absolute divorce, nor justification for retracting an award previously made to her under our statute. It is, at most, a factor that in a proper case may be considered as bearing upon the amount of, and the necessity for the allowance.

Nor is the petitioner's right to alimony defeated by invoking the doctrine of "unclean hands." Equity does not repel all sinners. To apply this rule the proven misconduct must be directly related to the subject-matter upon which relief is being sought. *Neubeck* v. *Neubeck, 94 N. J. Eq. 167; 119 Atl. Rep. 26.* Petitioner was absolved from all marital obligation to defendant by her decree for absolute divorce.

Save as a member of the public she owed him no duty to lead a virtuous life. On the other hand his obligation to support her after dissolution of the marriage continued without any reciprocal obligation owed him.

Such is the plain import of our statute as to alimony following absolute divorce. The subsequent misconduct of the former wife regardless of its nature cannot defeat her right to alimony though it may have material bearing upon the nature and amount of the allowance from time to time.

There is no justification upon the evidence for decreasing the amount in the alimony order because of the circumstances of petitioner's misconduct, or defendant's inability to pay as ordered. Except for small contributions from Greenberg the petitioner has no income, nor substantial ability to support herself. The amount of the alimony award is no more than bare subsistence. The record discloses no substantial change in defendant's earning capacity since the entry of the order in 1935. With that adjudication admeasuring his ability to respond to his obligation to support his former wife the burden is upon him to show clearly changed circumstances since, if he is to obtain a reduction in the order. He has not only failed in this respect, but the proofs offered are obviously not such as he could have submitted if his earnings have been as small as he contends. He is still in his regular business, and at his old stand and paying higher rent than in the past, employing one helper regularly and another on piece work. He submits no records to justify his claim of ekeing out a bare existence, though he has been aware of the importance of such records since he opposed the allowance of alimony originally in this cause. It is reasonable to conclude that he is earning at least as much, if not more than, his regular employe.

It clearly appears that he could have and can respond fully to the order if he would. His failure to have done so constituted contempt. An order may be entered accordingly with costs and counsel fee of $50 to petitioner. The application for vacating the alimony order is dismissed with costs and a counsel fee of $50 to petitioner.