137 N.J. Super. 56 (1975)
347 A.2d 799
BERNARD I. GARLINGER, PLAINTIFF-RESPONDENT,
v.
JOYCE GARLINGER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1975.
Decided November 3, 1975.
*58 Before Judges FRITZ, SEIDMAN and MILMED.
Mr. Gary N. Skoloff argued the cause for appellant (Messrs. Skoloff & Wolfe, attorneys; Mr. Francis W. Donahue on the brief).
Mr. Monroe Ackerman argued the cause for respondent (Messrs. Rudd and Ackerman, attorneys; Mr. Neil Braun on the brief).
The opinion of the court was delivered by SEIDMAN, J.A.D.
By dual judgment of divorce entered on June 29, 1973, the marriage of Bernard and Joyce Garlinger was dissolved. Incorporated in the judgment was the agreement of the parties with respect to, among other things, custody and support of the infant children of the marriage, visitation rights, alimony and the sale of the marital residence. Pertinent to this appeal is the provision that the husband should pay to defendant, until such time as she remarried, the sum of $125 a week.
In January 1974, alleging that defendant "has moved her boy friend into the former residence and is living with him without benefit of wedlock," plaintiff obtained an order directing defendant to show cause why an order should not be entered (1) transferring custody of the infant children to him, (2) compelling her to remove herself from the marital residence, (3) requiring the immediate sale of the residence and the division of the net proceeds, and (4) terminating all alimony payments.
Following a hearing the trial judge rendered an opinion, reported at 129 N.J. Super. 37 (1974), granting plaintiff a measure of relief. It was implemented by an order dated *59 July 11, 1974, which modified the divorce judgment by (1) suspending all support for defendant, "effective the first week of November, 1973, and until further order of the court"; (2) ordering the sale of the marital premises forthwith, instead of no later than July 31, 1975, as provided in the judgment, and (3) directing the Essex County Probation Department to investigate and submit a report on the well-being of the minor child, Sari. Defendant's motion for the enforcement of litigant's rights (the making of which is not disclosed in the record) was denied. She appeals.
Since the custody issue was not raised in this appeal, we need not concern ourselves with it, except to observe that the two children are now, respectively, 18 and 19 years of age. As for the disposition of the marital residence, we were informed by counsel at oral argument that the matter is moot. Thus, the scope of the appeal is limited to the suspension of the alimony payments.
The facts relating to this issue are essentially undisputed. Mrs. Garlinger admitted she had a paramour whom she intended to marry after he obtained a divorce from his spouse. It was stipulated that they had lived together in the marital residence and had sexual relations for a period of approximately two months prior to the filing of defendant's motion in January 1974. There was further evidence, not denied, that the paramour was also with defendant in her home late in February and early in March of that year. Plaintiff's counsel acknowledged that he had no proof they lived together thereafter or that the paramour was supporting defendant. His position, nevertheless, was that the illicit relationship was sufficient to negate plaintiff's obligation to pay alimony.
Mrs. Garlinger testified, as did the paramour, that, except for an occasional gift or taking her out to dinner, she received no support from him in any way, but she conceded that he had not bought food or paid any of the bills while living in her home. Her counsel argued that the alimony provision in the judgment had been agreed upon by the parties and constituted a contract, and no change of circumstances *60 had occurred to warrant the court's taking any action to modify or amend the judgment.
The issue, as posed by the trial judge, was whether, on these facts, it was "consistent with the purpose of alimony as defined by our statutes and cases, with justice and with public policy and morality for the husband to continue to pay alimony under these circumstances." 129 N.J. Super. at 39. He held it was not, stating that "gross misconduct by the ex-wife after entry of judgment may in itself justify a reduction or termination of alimony."
There are decisions in other jurisdictions which support the stand taken by the trial judge here. The leading exponent of that concept is Weber v. Weber, 153 Wis. 132, 140 N.W. 1052 (Sup. Ct. 1913), in which the court said that it is not in consonance with the judicial policy of the State to hold that subsequent misconduct of a former wife should not be considered in determining how much the former husband should continue to contribute to her support, and that if the wife chooses "a life of shame and dishonor," the court may make such misconduct a ground for cutting off all alimony. See also, Grant v. Grant, 52 Cal. App.2d 359, 126 P.2d 130 (D. Ct. App. 1942); Harper v. Murray, 184 Cal. 290, 193 P. 576 (Sup. Ct. 1920); Coggins v. Coggins, 288 Ky. 570, 159 S.W.2d 4 (Ct. App. 1942); Martens v. Martens, 211 Minn. 369, 1 N.W.2d 356 (Sup. Ct. 1941); Wilhelm v. Wilhelm, 201 Minn. 462, 276 N.W. 804 (Sup. Ct. 1937); Lindbloom v. Lindbloom, 180 Minn. 33, 230 N.W. 117 (Sup. Ct. 1930); Haritos v. Haritos, 185 Wis. 459, 202 N.W. 181 (Sup. Ct. 1925), and Rubisoff v. Rubisoff, 242 Miss. 225, 133 So.2d 534 (Sup. Ct. 1961), generally holding or intimating that a former wife's post-divorce immoral conduct is enough to justify a modification or termination of alimony payments.
However, the more widely accepted principle is that the unchastity of a former wife, subsequent to a divorce and the allowance of alimony, does not of itself justify the termination or modification of alimony payments, although it is a factor to be considered in appropriate circumstances. *61 Christiano v. Christiano, 131 Conn. 589, 41 A.2d 779 (Sup. Ct. Err. 1945); Lott v. Lott, 213 Ga. 559, 100 S.E.2d 170 (Sup. Ct. 1957); Smith v. Johnson, 321 Ill. 134, 151 N.E. 550 (Sup. Ct. 1926); Cole v. Cole, 142 Ill. 19, 31 N.E. 109 (Sup. Ct. 1892); Pauley v. Pauley, 280 Ky. 66, 132 S.W. 512 (Ct. App. 1939); Bowman v. Bowman, 163 Neb. 336, 79 N.W.2d 554 (Sup. Ct. 1956); Hayes v. Hayes, 220 N.Y. 596, 115 N.E. 1040 (Ct. App. 1917); Stanfield v. Stanfield, 22 Okla. 574, 98 P. 334 (Sup. Ct. 1908); Cariens v. Cariens, 50 W. Va. 113, 40 S.E. 335 (Sup. Ct. 1901).
Whether post-divorce unchastity is a ground for vacating or modifying alimony granted a former wife in a divorce judgment has apparently not been directly considered in this State by any appellate court, at least so far as reported decisions are concerned. See, however, Equitable Life Assur. Soc. of U.S. v. Huster, 75 N.J. Super. 492, 511 (App. Div. 1962). But Suozzo v. Suozzo, 16 N.J. Misc. 475, 1 A.2d 930 (Ch. 1938), and, recently, Grossman v. Grossman, 128 N.J. Super. 193 (Ch. Div. 1974), are in accord with the majority view. Suozzo held that unchastity of a former wife was not justification for retracting an alimony award, but was, at most, a factor that in a proper case might be considered as bearing upon the amount of, and the necessity for, the allowance. 16 N.J. Misc. at 477. See also, Casini v. Lupone, 8 N.J. Super. 362, 366 (Ch. Div. 1950). Grossman rejected as not well based the position that a former wife should be punished for her misconduct.
The minority view has a distinct punitive aspect. It imposes upon a former wife the obligation to lead a chaste life lest she forfeit her alimony payments in whole or in part. Weber v. Weber, supra, for example, speaks of choosing "a life of shame and dishonor." Other cases refer to the "state of immorality." See Harper v. Murray, Coggins v. Coggins, Wilhelm v. Wilhelm and Lindbloom v. Lindbloom, all supra. A harsh statement, which the trial judge here thought "has great force," is found in Rubisoff v. Rubisoff, supra: that it might be unconscionable to compel the husband by his *62 daily labor to support the divorced wife "in idleness and adultery." These pronouncements, no matter how well-intentioned they may be, reflect a double standard of morality which can be justified, if at all, solely by a socio-economic concept that "a husband pays his own way." Our research has disclosed no reported case in which a former husband, himself a transgressor, was barred from seeking to terminate or reduce alimony payments to his former wife on account of her immoral conduct.
We think that the majority view is bottomed upon the sounder and more realistic premise that a judgment of absolute divorce absolves the former wife from all marital obligations. Thereafter, except as a member of the public, she owes the former husband "no duty to lead a virtuous life." Suozzo v. Suozzo, supra at 478. After the divorce the parties "go into the world as strangers to each other." Stanfield v. Stanfield, supra at 340. See also Christiano v. Christiano, Smith v. Johnson and Cariens v. Cariens, supra.
It has been said wisely that equity does not repel all sinners. Neubeck v. Neubeck, 94 N.J. Eq. 167, 170 (E. & A. 1922); Suozzo v. Suozzo, supra at 476. The proven misconduct must be directly related to the subject-matter upon which relief is being sought. Id. If it is not, the issue of misconduct is irrelevant. Thus, a wife's adultery, absent a dum casta clause, is no defense to an action for support under a separation agreement. Equitable Life Assur. Soc. of U.S. v. Huster, supra, 75 N.J. Super. at 510; Thomas v. Thomas, 104 N.J. Eq. 607, 609 (E. & A. 1929); Neubeck v. Neubeck, supra at 171; Whittle v. Schlemm, 94 N.J.L. 112, 114 (E. & A. 1919). In none of these cases did the court hold that, by reason of the wife's adultery, enforcement of the agreement would be repugnant to good morals or against public policy, and thus unconscionable. We perceive no valid basis for treating differently a husband's post-divorce obligation to pay alimony.
As was indicated in Equitable Life Assur. Soc. of U.S. v. Huster, supra at 511, such cases are not matrimonial actions *63 involving alimony incidental to divorce or statutory support, where "we are faced with a balance of matrimonial rights and obligations arising out of disputes concerning acts offensive to the marital state, where a wrong on the part of the wife may give rise to a right on the part of the husband, or cancel his obligation to support her." (Emphasis supplied.) Cf. G. v. G., 67 N.J. Eq. 30, 41 (Ch. 1904), holding that, in the case of a divorce a mensa et thoro, the marriage relation still exists and with it the duty of chastity on the part of the wife, and alimony is conditional upon her performance of that obligation. See also Bishop v. Bishop, 18 Ohio Misc. 177, 248 N.E.2d 641 (C.P. 1969); Courson v. Courson, 213 Md. 183, 129 A.2d 917 (Ct. App. 1957); but cf. Flood v. Flood, 24 Md. App. 395, 330 A.2d 715 (Ct. Spec. App. 1975).
We hold, therefore, that where a marriage is dissolved by judgment of divorce, and provision is made for alimony, either by order of the court or by agreement of the parties, the subsequent unchastity of the wife is not by itself cause for terminating or reducing the alimony. To the extent that it is in conflict with this pronouncement, the opinion below is overruled.
But we do not mean that such unchastity may have no effect at all upon the former husband's obligation to continue the alimony payments. It is unquestionably a factor to be considered in a proper case, not as misconduct per se, but to the extent that it may bear upon the amount of, and the necessity for, the allowance. See Suozzo v. Suozzo, supra at 477; Grossman v. Grossman, supra.
In a matrimonial action the court is empowered to make such order for alimony as the circumstances of the parties and the nature of the case render fit, reasonable and just. The court, in doing so, is required to consider, among other things, the actual need of the party to whom the award is to be made. N.J.S.A. 2A:34-23. Such order may be revised and altered by the court from time to time as circumstances may require. Id. See also Martindell v. Martindell, *64 21 N.J. 341, 352 (1956); Di Tolvo v. Di Tolvo, 131 N.J. Super. 72 (App. Div. 1974). Even an agreement between husband and wife with respect to alimony is not immutable, and may be modified by judicial action upon a showing of appropriate changed circumstances. Berkowitz v. Berkowitz, 55 N.J. 564 (1970); Schiff v. Schiff, 116 N.J. Super. 546 (App. Div. 1971); Gulick v. Gulick, 113 N.J. Super. 366 (Ch. Div. 1971).
We need not dwell on such matters as the burden or quantum of proof, the nature and extent of the changed circumstances warranting relief, and differences in approach depending upon whether the alimony is court-ordered or the product of agreement. The applicable principles may be gleaned from the cases on the subject. We have no doubt, however, that where a former wife chooses to cohabit with a paramour, whether in her abode or his, or otherwise consorts with him, the issue may well raise whether, in the circumstances, she has further need for the alimony. If it is shown that the wife is being supported in whole or in part by the paramour, the former husband may come into court for a determination of whether the alimony should be terminated or reduced. Similarly, if the paramour resides in the wife's home without contributing anything toward the purchase of food or the payment of normal household bills, then there may be a reasonable inference that the wife's alimony is being used, at least in part, for the benefit of the paramour, in which case it could be argued with force that the amount thereof should be modified accordingly. In short, the inquiry is whether the former wife's illicit relationship with another man, apart from the misconduct per se, has produced a change of circumstances sufficient to entitle the former husband to relief. See Grossman v. Grossman, supra.
It is appropriate to add at this point that we do not intend to condone conduct that may either amount to the commission of a crime or be offensive to moral standards held by substantial segments of the community. But our obligation *65 here is to implement the legal purposes of post-divorce support and not to pretend to be keepers of the public morals.
In the case before us the trial judge suspended alimony from the first week of November 1973, the date of the beginning of cohabitation, until the further order of the court. However, the record does not support a suspension beyond March 2, 1974, in view of the acknowledged absence of proof that Mrs. Garlinger and her paramour cohabited after that date or that he was supporting her. As for the period between the beginning of November and March 2, 1974, all that appears, besides the cohabitation in Mrs. Garlinger's residence, is that the paramour did not contribute anything toward the cost of food or such household expenses as utilities. Although it is evident that a part of the alimony payments received by Mrs. Garlinger necessarily inured to the benefit of her friend, there were no findings below with respect to the amount so used or to whether this reflected a lack of need for that money by Mrs. Garlinger so as to justify a reduction in or suspension of the alimony payments for the period in question. Nevertheless, we are of the view that the time and expense of a remand for a further hearing on the limited issues and for requisite findings of fact is hardly warranted, considering the few weeks that are involved. On the other hand, it seems clear that the paramour did benefit from the alimony payments to some degree. In the circumstances, we think that the interests of justice will be adequately served if the suspension of alimony payments is limited to the two-month period of cohabitation stipulated by counsel. Plaintiff will be required to pay to defendant the remaining arrearage.
The order dated August 27, 1974, is modified accordingly. As modified, it is affirmed.