### 37885. HATHCOCK v. HATHCOCK.

JORDAN, Chief Justice.

After grant of his application, William Parker Hathcock appeals from an order denying modification of his periodic alimony payments to his former wife, Betty Bennett Hathcock, and an order granting her motion for contempt. Additional facts will be stated as necessary for consideration of his enumerations of error.

1. William sought modification of his periodic alimony payments to his former wife, Betty, under the "live-in lover law." Code Ann. § 30-220 (b). By questions directed to her on cross-examination, he sought to elicit her testimony as to whether or not she had a sexual relationship with the alleged live-in lover. Her objection under Code Ann. § 38-1205 (a) was sustained, and she was not required to testify about whether the relationship was of a sexual nature.

Code Ann. § 38-1205 (a) provides that "No party shall be required to testify as to any matter which may criminate or tend to criminate himself or which shall tend to bring infamy or disgrace or public contempt upon himself or any member of his family."

Relying upon *Brooks v. State,* 233 Ga. 524, 526 (2) (212 SE2d 355) (1975), William contends that the materiality of Betty's testimony outweighs the testimonial privilege of the statute. *Brooks*

has been followed in *Brown v. State,* 242 Ga. 536, 538 (3) (250 SE2d 438) (1978), requiring an attorney to answer questions tending to establish that his legal assistance was ineffective although the answers might tend to bring him into public disgrace or contempt. However, in civil actions involving proof of sexual relationships, invocation of the privilege has been allowed despite the materiality of the testimony because an inference against the witness's interest properly may be drawn by the factfinder from the witness's invocation of the privilege. This adverse inference is based upon an implied admission that a truthful answer would tend to prove that the witness had committed the act. *Simpson v. Simpson,* 233 Ga. 17, 21 (209 SE2d 611) (1974). Additionally, sexual misconduct may be proven in such civil actions by circumstantial evidence, so the necessity of obtaining an admission of the fact of sexual intercourse from the party or witness is diminished. *Johnson v. Johnson,* 218 Ga. 28 (1) (126 SE2d 229) (1962). Finally, it remains a crime in Georgia for an unmarried person to have sexual intercourse. Code Ann. § 26-2010. For these reasons, the trial court did not err by sustaining Betty's objections to questions seeking to determine from her on cross-examination whether she had a sexual relationship with the alleged live-in lover.

2. The trial court charged that an inference against the witness invoking the privilege might be drawn by the jury but omitted that portion of William's request to charge which would have told the jury the legal basis for and effect of the adverse inference, that is, an implied admission that a truthful answer would tend to prove that the witness had committed the act. Betty contends that charging the jury as requested by William would have placed an improper emphasis upon the effect to be given to the inference. We disagree. The omitted portion of the request to charge was in the exact language of *Simpson,* supra. Omission of the requested language left the jury without instructions as to the nature and effect of the adverse inference they might choose to draw from Betty's invocation of the privilege. We cannot say that this error was harmless because proof of sexual intercourse was the linchpin of William's claim. Neither do we decline to review this error because William's objection to the omission of the language first was stated after the court recharged the jury rather than after the original charge of the court. Code Ann. § 70-207 (c).

3. William has enumerated as error that portion of the court's charge in which the jury was instructed that "By meretricious, it is meant a relationship, though not necessarily illegal, in which the former spouse derives some economic benefit from her voluntary cohabitation with the third party."

Relying on Black's Law Dictionary, William contends that the relationship to which the live-in lover law is addressed must be sexual but need not involve economic benefits flowing either from the live-in lover to the cohabiting former spouse or from the cohabiting former spouse to the live-in lover. However, the definition of a "meretricious" relationship found in Black's Law Dictionary is a "relationship sustained by persons who contract a marriage that is void by reason of legal incapacity." We do not believe the General Assembly had the latter relationship in mind when it enacted the live-in lover statute. Code Ann. § 30-220 (b).

We previously have determined that disallowing alimony modification pursuant to a 1979 amendment to the live-in lover statute "would require those spouses to subsidize their former husbands and wives and their lovers who are cohabiting together." *Morris v. Morris,* 244 Ga. 120, 123 (259 SE2d 65) (1979). We later referred to the relationship contemplated by the General Assembly as one "similar in nature to marriage" or "akin to marriage." *Sims v. Sims,* 245 Ga. 680, 682 (266 SE2d 493) (1980). In both *Morris* and *Sims,* we concluded that the cohabiting former spouse does not have a "vested right to continue to receive full alimony from a former spouse while contemporaneously sharing living quarters (and thus expenses) with another (albeit unmarried) mate." 245 Ga. at 683.

We adhere to these views, and we hold today that by use of the word "meretricious" the General Assembly meant the live-in lover law to include those instances in which persons of the opposite sex dwell together continuously and openly in a relationship similar or akin to marriage (including either sexual intercourse or the sharing of living expenses) albeit they are not husband and wife in contemplation of the law.

Thus, the statute applies upon proof of sexual intercourse between the former spouse and the third party although no proof is offered tending to establish that the former spouse received from, gave to, or shared with the third party expenses of their cohabitation. Conversely, the statute also applies upon proof that the former spouse received from, gave to, or shared with the third party expenses of their cohabitation although no proof is offered tending to establish sexual intercourse between the former spouse and the third party.

The trial court erred by limiting the statute's application to relationships in which the former spouse derives economic benefit from the cohabitation with the third party.

4. The original divorce decree, entered in Whitfield County, required William to pay Betty alimony at a rate of $120 per month. Prior to trial of this modification action brought by William against Betty in Fulton County, her present county of residence, William

sought by motion in this action to have the alimony payments suspended pending resolution of the issues. The Superior Court of Fulton County suspended the $120 per month alimony payments pending jury trial on the condition that if Betty prevailed, "all alimony due from this date shall be due and owing." When Betty prevailed at trial, the court lifted the suspension and ordered the accrued sum paid instanter. After William did not pay the accrued alimony or recommence payments of the periodic sums when due, Betty filed a contempt motion. The court then ordered the sums due paid within thirty days or that William suffer incarceration, and that William continue the periodic payments pending appeal.

William contends that Betty should have been required to file her motion for contempt in Whitfield County instead of in the present case in Fulton County. We have held that contempt applications must be filed in the county where the divorce and alimony decree was entered. *Austin v. Austin,* 245 Ga. 487, 489 (265 SE2d 788) (1980); *Connell v. Connell,* 222 Ga. 765, 767 (152 SE2d 567) (1966); *Goodrum v. Goodrum,* 202 Ga. 135 (3) (42 SE2d 450) (1947). The reason for the rule has been stated to be that "Only the court offended has the power to entertain proceedings to that end." *Connell,* supra, at 767.

In a practical sense, both the Whitfield and the Fulton courts are offended by the nonpayments in the present case. Having sought and obtained the temporary suspension order from the Fulton Court, William is in no position to complain of the enforcement of its condition that payment be made current when Betty prevailed. We need not reach the question of whether or not William's filing of this modification action in Fulton County constituted his consent to Betty's filing of motions for contempt relating to any alimony arrearages that might be due to Betty under the original Whitfield County divorce and alimony decree. See, *Ledford v. Bowers,* 248 Ga. 804 (286 SE2d 293) (1982).

5. The award of attorney fees under Code Ann. § 30-220 (b) must be set aside because the judgment denying modification of the periodic alimony payments has been reversed.

*Judgment affirmed in part; reversed in part. All the Justices concur, except Marshall, J., who concurs in the judgment only, and Weltner, J., not participating.*

DECIDED FEBRUARY 9, 1982 —
REHEARING DENIED FEBRUARY 23, 1982.

*James B. Drew, Jr., Don M. Jones,* for appellant.
*Dodd, Driver, Cornell & Hughes, Ellwood F. Oakley III,*

for appellee.