## S90A1372. PENCE v. PENCE.
### (401 SE2d 727)

BELL, Justice.

The plaintiff-appellant was the wife of the defendant-appellee. The parties were divorced in New Jersey in April 1988. Under the terms of a settlement agreement that was incorporated into the decree of divorce, appellee agreed to pay periodic alimony to the wife, but appellant agreed that the alimony could be terminated if she cohabited with another man within the meaning of New Jersey law that under certain circumstances permits reduction or termination of periodic alimony if a former spouse cohabits with another person. See *Gayet v. Gayet,* 456 A2d 102 (92 N.J. 149) (1983). Thereafter, appellant became a Florida resident and appellee became a Georgia resident. Appellee ceased to pay periodic alimony to appellant, alleging that she had cohabited with another man (hereafter the third party) in Florida. In August 1989 appellant filed suit in Georgia to domesticate the New Jersey decree and to hold appellee in contempt for failure to pay the periodic alimony. Appellee counterclaimed for modification of his obligation to pay alimony, and for attorney fees.

After holding an evidentiary hearing, the trial court entered a judgment that domesticated the New Jersey decree and awarded appellee the relief he sought. The court found appellant had cohabited with the third party within the meaning of both New Jersey and Georgia law, and terminated appellee's obligation to pay periodic alimony. Appellant then applied for discretionary review, which we granted. For the reasons we give in the remainder of this opinion, we reverse and remand.

1. Initially, we must decide whether to apply Georgia or New Jersey law to determine whether appellant's actions constituted cohabitation. The New Jersey divorce decree provided that the appellee would pay periodic alimony until, inter alia, appellant "cohabit[ed] with an unrelated male, [but that] in the event that [appellant] . . . cohabit[ed] with an unrelated male, tantamount to marriage pursuant to *Gayet* [, supra, 456 A2d] or subsequent caselaw," appellee would

still have to pay periodic installments representing appellant's equitable distribution of appellee's pension. Considering this language as a whole, we find it reflects the parties' intent that periodic alimony would be terminated if appellant cohabited with another man within the meaning of *Gayet*. *Gayet*, as we shall describe later in this opinion, is the law of New Jersey on this subject.

However, although the decree refers only to the New Jersey law of cohabitation, the evidentiary hearing in this case was conducted under the law of both states, and the trial court concluded that appellant's actions were cohabitation under both Georgia and New Jersey law. Appellant contends that the law of Georgia governs this case, and appellee responds that the trial court's judgment is sustainable under either Georgia or New Jersey law.

There is no indication that when the parties entered into their agreement they considered whether New Jersey law would be applied in the event a modification action was filed in another state. However, as the parties at least intended that *Gayet* would govern New Jersey modification proceedings, as a matter of comity we deem the best approach to be to apply *Gayet* uniformly, regardless of where the modification proceeding is brought. Accordingly, we will apply New Jersey law to this case. See generally *Blue v. Blue*, 243 Ga. 22 (252 SE2d 452) (1979); *Hutto v. Plagens*, 254 Ga. 512, 514 (3) (330 SE2d 341) (1985).[1]

2. Unlike Georgia, New Jersey has no statute prescribing the conditions under which alimony may be modified due to cohabitation. Cf. OCGA § 19-6-19 (b). In their settlement agreement the parties referred to a case, *Gayet*, supra, 456 A2d, that is the controlling case in New Jersey on this subject. In *Gayet* at 102 the New Jersey Supreme Court announced that

> the test for modification of alimony is whether the [cohabitation] relationship has reduced the financial needs of the dependent former spouse.
>
> . . .
>
> In *Lepis v. Lepis*, [416 A2d 45 (83 N.J. 139)] (1980), this Court held that an award of alimony, whether incorporated in a separation agreement or the terms of the divorce judg-

---

[1] In *Blue* and *Hutto* we held that as a matter of comity a Georgia court may modify a foreign state's award of alimony after the decree from the foreign state has been domesticated in Georgia, if the decree would have been modifiable in the foreign state. However, *Blue* and *Hutto* appear to have left unclear the degree to which there must be congruence between the laws of modification in Georgia and the foreign state, and under what circumstances the substantive modification law of the foreign state will be applied.

ment, may be modified following a final judgment of divorce whenever changed circumstances substantially modify the economic conditions of the parties. Among the changed circumstances to be considered by trial courts, the Court specifically included "the dependent spouse's cohabitation with another. . . ." [Cit.] The Court noted that alimony should decrease when circumstances render the original amount unnecessary to maintain the standard of living reflected in the original decree or agreement. [Cit.] The task here is to determine whether circumstances have rendered a portion of the support received unnecessary.

. . .

[T]he majority of jurisdictions have adopted an economic needs test to determine whether cohabitation requires modification of an alimony award. [Cit.] That test "has been clearly defined in *Garlinger v. Garlinger*, [347 A2d 799 (137 N. J. Super. 56) (N. J. Super. Ct. App. Div. 1975)] and has been used by other courts in determining termination of alimony." [Cit.] The principles of *Garlinger* call for modification when (1) the third party contributes to the dependent spouse's support, or (2) the third party resides in the dependent spouse's home without contributing anything toward the household expenses. [Cit.] In short, this scheme permits modification for changed circumstances resulting from cohabitation only if one cohabitant supports or subsidizes the other under circumstances sufficient to entitle the supporting spouse to relief.

. . .

The extent of actual economic dependency, not one's conduct as a cohabitant, must determine the duration of support as well as its amount. [*Gayet*, supra at 103, 104.]

3. In the present case the trial court found that during the time appellant lived with the third party in Florida she received an economic benefit, in that she did not pay any rent or portion of the third party's mortgage. The court further found appellant and the third party had cohabited within the meaning of New Jersey law. After reviewing the record, we conclude that the evidence supports the findings of the trial court.

4. However, on the record and findings before us, we hold the court was not authorized under New Jersey law to terminate appellant's alimony. The pertinent case in this regard appears to be

*Garlinger v. Garlinger,* supra, 347 A2d at 804.[2] In *Garlinger* the Appellate Division of the New Jersey Superior Court reviewed a judgment in which the trial court had

> suspended alimony from the first week of November 1973, the date of the beginning of cohabitation, until the further order of the court.

The Appellate Division held that the trial court had erred in totally suspending alimony, both for the period in which the former wife cohabited with her "paramour" and for the period after they ceased to cohabit:

> [T]he record does not support a suspension beyond March 2, 1974, in view of the acknowledged absence of proof that Mrs. Garlinger and her paramour cohabited after that date or that he was supporting her. As for the period between the beginning of November and March 2, 1974, all that appears, besides the cohabitation in Mrs. Garlinger's residence, is that the paramour did not contribute anything toward the cost of food or such household expenses as utilities. Although it is evident that a part of the alimony payments received by Mrs. Garlinger necessarily inured to the benefit of her friend, there were no findings below with respect to the amount so used or to whether this reflected a lack of need for that money by Mrs. Garlinger so as to justify a reduction in or suspension of the alimony payments for the period in question.

Pretermitting whether the trial court in the case under consideration by this Court was justified under Georgia law in permanently terminating all alimony from the point at which appellant first began cohabiting with the third party, we find that under the approach taken by the Appellate Division in *Garlinger* the trial court erred.

The record in this case shows appellant lived with the third party in housing provided by the third party for three periods totaling some ten months during a 14-month period in 1988-1989. More specifically, the three periods occurred in July 1988, October-December 1988, and February-September 1989. Until May 1989 appellant also had available as a residence the former marital home in New Jersey, but in May 1989 that home was sold. During the time she stayed with the third

---

[2] *Garlinger,* supra, 347 A2d at 803, was followed in *Gayet* with respect to the test for changed circumstances that are sufficient to allow modification of alimony. In *Garlinger,* supra, 347 A2d at 804, the Appellate Division also addressed whether the trial court had correctly reduced the duration and amount of alimony.

party, appellant paid some of her expenses, such as groceries and utilities, but she received a substantial economic benefit through not having to pay rent or part of the third party's mortgage.

Applying *Garlinger* to this evidence, we draw two conclusions. First, although the evidence supports the trial court's finding that appellant cohabited with the third party during the 14-month period, the evidence does not support the termination of benefits beyond September 1989, as there is no proof appellant thereafter received any economic benefit from the third party. Second, with respect to the 14-month period, the trial court made no findings that would justify reducing or terminating alimony for the period. Such findings would concern the amount of benefit appellant received from the third party, and whether the benefit showed appellant did not need part or all of her alimony for the period.

5. Accordingly, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.[3] This holding moots the remainder of appellant's contentions.

*Judgment reversed and remanded. All the Justices concur, except Weltner, Hunt and Fletcher, JJ., who concur specially.*

HUNT, Justice, concurring specially.

The majority has used New Jersey law to reverse what, under the facts of this case, appears to be an unfair result, that is, the *complete* termination of the wife's alimony. I would not apply New Jersey law,[4] but would reach the same result as the majority, following Georgia law.

The trial court's finding of a meretricious relationship within the meaning of OCGA § 19-6-19 (b)[5] was based on the husband's proof that the wife received an economic benefit in that relationship. See

---

[3] The Appellate Division reached a different result in *Garlinger*, supra, 347 A2d 804. Instead of reversing and remanding, the Court modified the judgment with its own calculation of the duration and amount by which it was appropriate to reduce the former wife's alimony payments. Under the facts of the present case, we deem the better disposition to be a remand to the trial court, where the court may adduce additional evidence, if necessary, and make the requisite findings and conclusions under New Jersey law.

[4] The parties' reference in their agreement to the New Jersey case of *Gayet v. Gayet*, 456 A2d 102 (N.J. 1983), merely describes the type of situation in which the husband's alimony *might* be reduced or terminated. In such a circumstance, the husband agreed to continue to pay the wife's equitable share of his pension. The reference in the agreement to the New Jersey case does not authorize the application of New Jersey law, nor do any of the other facts cited by the majority.

[5] OCGA § 19-6-19 (b) provides, in pertinent part,
[T]he voluntary cohabitation of [the] former spouse with a third party in a meretricious relationship shall also be grounds to modify provisions made for periodic payments of permanent alimony for the support of the former spouse. As used in this subsection, the word "cohabitation" means dwelling together continuously and openly in a meretricious relationship with a person of the opposite sex.

*Hathcock v. Hathcock,* 249 Ga. 74, 76 (3) (287 SE2d 19) (1982). This court in *Hathcock* reversed the trial court because the trial court had construed OCGA § 19-6-19 (b) to prohibit modification on evidence of sexual intercourse without proof of an economic benefit to the former spouse from her cohabitation with the third party. We held in *Hathcock* that modification was authorized without regard to financial circumstances resulting from the live-in lover relationship. We also held OCGA § 19-6-19 (b) would apply to the situation presented here, where there is proof of an economic benefit to the former spouse, without proof of a sexual relationship. In a case like this, where modification is sought based on proof solely of an economic benefit to the former spouse, resulting from that former spouse's cohabitation, I would require the trial court, before modifying the husband's alimony obligation, to consider the extent to which all or part of the alimony award is unnecessary by virtue of the economic benefit the former spouse derives, or has derived, from the meretricious relationship. Thereafter, the trial court may modify, or terminate, the alimony obligation, as fairness dictates.[6] Accordingly, I would reverse and remand for such a consideration.

I am authorized to state that Justice Weltner and Justice Fletcher join in this special concurrence.

DECIDED MARCH 15, 1991 —
RECONSIDERATION DENIED MARCH 27, 1991.

*James J. Macie,* for appellant.
*John S. Noell, Jr.,* for appellee.

---

[6] Termination is possible only by applying Georgia law to these facts. Under the majority result, New Jersey case law is to be applied on remand by the trial court. As I read *Garlinger v. Garlinger,* 347 A2d 799 (N.J. 1975), if this relationship has ended the trial court may not terminate alimony but may only provide modification for the period of time during which the relationship existed.