818 A.2d 340 (2002)
359 N.J. Super. 53
Kerry ROSE, Plaintiff
v.
Alexander CSAPO, Defendant.
Superior Court of New Jersey, Chancery Division, Family Part, Burlington County.
Decided April 26, 2002.
*341 Karen Amacker, Mount Holly, for Plaintiff.
Apple Sulit-Peralejo, Voorhees, for Defendant.
MILLARD, J.S.C.
This case presents the issue of whether a dependent spouse's cohabitation with her paramour while the divorce litigation is still pending, terminates the supporting spouse's obligation to pay pendente lite spousal support.[1]
The parties were married in 1985 and have four children, ages 16, 13, 12 and 9. In January 2000, Kerry Rose advised her husband that she wanted a divorce. The parties continued to occupy separate bedrooms until an incident occurred on January 9, 2001, causing Plaintiff to obtain a domestic violence temporary restraining order against her husband. On January 29, 2001 the domestic violence order was dismissed and an FD order was entered for support, visitation and civil restraints. The Plaintiff elected to leave the marital home, and with the four children, temporarily moved in with her parents. The parties agreed that Defendant would pay his wife $700 per week unallocated support. The order was entered as "without prejudice" and required the parties to exchange case information statements after Plaintiff obtained alternative housing, other than with her parents.
Defendant works for General Motors, and due to a temporary agreement between *342 management and the union, his class of employee was required to work 10 hours a day, 7 days a week between November 1999 and September 2000. As a result his income rose from $58,194 in 1998 to $101,191 in 1999, to $112,118 in 2000, and thereafter returned to $71,629 in 2001. The court determined his current income for purposes of this application to be $81,630. Plaintiff holds a nursing license, but has not worked during most of the marriage. It is apparent that the parties mutually agreed that she would stay at home during the children's infancy.
Several orders followed, including a consent order dated February 13, 2001, awarding Plaintiff custody of the children, and $5,000 on account of attorney fees.
On March 26, 2001 Plaintiff and her paramour jointly purchased and mortgaged a home for $210,000, and moved in together with the children.
The Complaint for Divorce was filed on November 15, 2001. On January 30, 2002, Defendant filed the instant motion seeking a reduction in his unallocated support order, based on a claim that he had no obligation to provide spousal support to his wife when she was openly cohabitating with her paramour. He requests that his support obligation be set pursuant to the child support guidelines.
In her response, Plaintiff acknowledges the joint purchase of the home, accomplished partially by a loan from her parents in the amount of $50,000. She states that her paramour contributes the sum of $800 per month to their monthly budget, and that he cannot contribute anymore than that sum because he has children from another marriage, and other expenses which make further contribution impossible. Plaintiff has not provided any other detailed financial information concerning the paramour's finances. She claims that he does not contribute to her expenses and she does not contribute to his expenses. Her certification concludes by asking the court to maintain the status quo as we proceed on a pendente lite basis.
The power of the court to provide interim relief in the form of support in matrimonial actions, arising as it does from statutory authority, N.J.S.A. 2A:34-23, is well established in practice and precedent. Crowe v. De Gioia, 90 N.J. 126, 130, 447 A.2d 173 (1982), Schiff v. Schiff, 116 N.J.Super. 546, 562, 283 A.2d 131 (App.Div.1971), certif. Den. 60 N.J. 139, 286 A.2d 512 (1972). The pendente lite support motion is often indispensable in a matrimonial action as the heavy caseloads frequently mean there is a substantial delay between the time of filing the complaint and the final hearing. Pendente lite support awards are entered based upon the submission of affidavits and case information statements, often accompanied by oral argument, and almost always without a plenary hearing. Mallamo v. Mallamo, 280 N.J.Super. 8, 12, 654 A.2d 474 (App. Div.1995).
The general purpose of pendente lite support is to maintain the parties in the same or similar situation they were in prior to the inception of the litigation; "to preserve the status quo through the device of awarding temporary financial support pending a full investigation of the case." Id. at 11-12, 654 A.2d 474.
There are several reported cases dealing with cohabitation by the supported spouse in the post judgment setting. In Lepis v. Lepis, 83 N.J. 139, 151, 416 A.2d 45 (1980), the touchstone of support modification cases, it was noted that courts have recognized that a spouse's cohabitation constitutes changed circumstances that may warrant support modification. The analysis in Lepis was refined in Gayet v. Gayet, 92 N.J. 149, 456 A.2d 102 *343 (1983), which held that the test to apply to a cohabitation case post judgment is the economic needs analysis set forth in Garlinger v. Garlinger, 137 N.J.Super. 56, 347 A.2d 799 (App.Div.1975). A modification of alimony in cases of the supported spouse's cohabitation, is appropriate where that party is now receiving economic support arising out of the cohabitation. Id. at 64, 347 A.2d 799. It is the economic impact of the act of cohabitation which permits the termination or modification of an alimony award. In these cases, it is "the extent of actual economic dependency, not one's conduct as a cohabitant" which determines the duration and amount of support. Gayet, supra at 154, 456 A.2d 102.
In Konzelman v. Konzelman, 158 N.J. 185, 729 A.2d 7 (1999), the New Jersey Supreme Court upheld the validity of anti-cohabitation clauses in property settlement agreements without applying the economic needs analysis. Justice Handler noted that remarriage of a dependent spouse works as an automatic termination of alimony payments in accordance with statutory law. Id. at 195, 729 A.2d 7. Similarly, "where a dependent spouse enters into a new relationship, which but for the license is tantamount to a marriage, the economic consequences of the new relationship will be the same as those of remarriage." Id. at 197, 729 A.2d 7. "[W]here the parties have agreed that cohabitation will constitute a material changed circumstance... where the dependent spouse has entered into a new marriage-like relationship, the court need not delve into the economic needs of the dependent former spouse." Ibid.
One subsequent case interpreting Konzelman determined that the automatic termination of alimony would not occur post judgment without the economic needs test unless there was an anti-cohabitation clause in the property settlement agreement. Conlon v. Conlon, 335 N.J.Super. 638, 763 A.2d 339 (Ch.Div.2000). In the court's analysis much emphasis was placed on distinguishing the finding in Romei v. Romei,[2] an unreported Chancery Division opinion which had denied alimony in a pendente lite setting where there was a finding of cohabitation. Id. at 642, 648-649, 763 A.2d 339. The Conlon court noted that there were significant differences between the effects of cohabitation in the Romei pendente lite setting as contrasted with a post judgment application for modification. Ibid.
Of course, in the pendente lite setting, the supporting spouse is not in a position to insist on an anti-cohabitation clause, a practice that has become not uncommon in divorce settlements. As noted previously, the purpose of the pendente lite order is to maintain the status quo between the parties. In the typical pendente lite cases, the dependent spouse remains in the marital home. Maintenance of the status quo involves payment of the marital bills and expenses necessary to maintain the dependent spouse at the standard of living enjoyed during the course of *344 the marriage. Lepis, supra at 150, 416 A.2d 45. In the instant case the status quo is more difficult to ascertain.
What standard of living must the court maintain when the dependent spouse leaves the marital home (albeit here under justifiable circumstances), and subsequently moves in with a paramour in a new on-going "marriage-like" relationship? The question becomes more acute in a pre-judgment setting, when the dependent spouse has already embarked on a new physical, emotional and financial relationship.
These circumstances so sufficiently disrupt or alter the status quo of the former relationship, that maintenance of the status quo can no longer be the goal sought to be achieved by the court in the pendente lite setting. There must, of course, be a finding of actual cohabitation. "Cohabitation is not defined or measured solely or even essentially by `sex' ... [but] involves an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage. These can include, but are not limited to living together, intertwined finances such as joint bank accounts, sharing living expenses and household chores, and recognition of the relationship in the couple's social and family circle." Konzelman, supra at 202, 729 A.2d 7.
Here, in the pendente lite setting, a supporting spouse should not be placed in the untenable position of being required to finance the spouse's new relationship. A finding of cohabitation as defined in Konzelman, Ibid. is a determination that the parties have such an intertwined relationship that support of the spouse inevitably constitutes support of the paramour. Mandating spousal support in such a situation would appear to be contrary to public policy. This however, is not to say that the economic need of the dependent spouse should not be considered. If the court finds the dependent spouse's relationship is something less that full cohabitation, then the economic needs analysis should be employed. Likewise, a future change in the dependent spouse's relationship would constitute a change of circumstances warranting a modification.
Where a prima facie showing of cohabitation is made out by the supporting spouse, there is a rebuttable presumption which shifts the burden of proof to the alleged cohabiting spouse, to show that there is no actual economic benefit being received. Ozolins v. Ozolins, 308 N.J.Super. 243, 245, 705 A.2d 1230 (App.Div. 1998); Grossman v. Grossman, 128 N.J.Super. 193, 197, 319 A.2d 508(Ch.Div.1974), Frantz v. Frantz, 256 N.J.Super. 90, 92, 606 A.2d 423 (1992). This is particularly appropriate here as well, where the cohabiting party and paramour hold all the resources, as well as the, financial and social/sexual information necessary for the court to make a finding regarding cohabitation and whether pendente lite spousal support should be eliminated. "It would be unreasonable to place the burden of proof on a party not having access to the evidence necessary to support that burden of proof." Id. at 93, 606 A.2d 423.
Given the facts of this case, the court is satisfied that the dependent spouse is cohabiting with her paramour as defined in Konzelman, supra at 202, 729 A.2d 7. She purchased a home jointly with her paramour, they share roof expenses, they share common meals, and for all intents and purposes hold themselves out as a social "couple". Inherent in such a finding is a determination that she is receiving economic benefit from the new relationship. Whether it equates to a dollar for dollar equivalent to that which her *345 spouse previously provided is not the controlling issue. The dependent spouse has begun a new life, without waiting for the court to dissolve the marriage. Of course she is free to do so, but she can not expect that her husband will financially support her in such an undertaking.
Defendant's application to reduce the unallocated support award of $700 per week is granted. Plaintiff's request for pendente lite spousal support is denied. Child support, computed according to the guidelines shall be ordered at $470 per week. The decision is retroactive to the date of filing of this motion.
NOTES
[1] A Final Judgment of Divorce was entered on January 31, 2003, wherein the parties acknowledged a Property Settlement Agreement, and Defendant withdrew his Answer to Plaintiff's cause of action.
[2] Romei v. Romei, FM-14-112-99 (Ch Div 1999, decided Nov. 10, 1999). In Conlon, at 642, 763 A.2d 339, the following footnote appears: "It is noted that the Romei decision was rendered at the trial court level. Additionally, no appeal was taken and the opinion was not published. Therefore, it does not constitute binding authority and is limited by the language in Rule 1:36-3. See Newark Insurance Company v. Acupac Packaging Inc., 328 N.J.Super. 385, 746 A.2d 47 (App.Div. 2000). However, it was the subject of a feature article in the New Jersey Law Journal and has received widespread attention, spawning this motion and undoubtedly similar requests statewide. See O'Brien, Tim Cohabitation Held to End Alimony Even Without a Konzelman Clause, 158 N.J. L.J. 853 (Dec. 6, 1999)".