**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5572-17T2

JAMES WATKINS,

      Plaintiff-Appellant/
Cross-Respondent,

v.

AMANDA HOWARD,
f/k/a AMANDA WATKINS,

      Defendant-Respondent/
Cross-Appellant.

_____

Argued September 25, 2019 – Decided October 21, 2019

Before Judges Koblitz and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-14666-92.

Steven Resnick argued the cause for appellant/ cross-respondent (Ziegler, Zemsky & Resnick, attorneys; Steven Resnick and Ruth Kim, on the briefs).

Paul Joseph Concannon argued the cause for respondent/cross-appellant (Dario Albert Metz &

Eyerman, LLC, attorneys; John E. Finnerty and Paul Joseph Concannon, on the briefs).

PER CURIAM

Plaintiff James Watkins appeals from June 27 and 29, 2018 post-judgment orders, which denied his motion to terminate alimony and life insurance based upon cohabitation, for discovery and a plenary hearing. Defendant Amanda Howard cross-appeals from the June 27 order, which denied her request for counsel fees. We affirm on the appeal, but reverse and remand on the cross-appeal.

We take the following facts from the record. The parties married in 1968, and divorced in 1993. Two children were born of the marriage, who are emancipated. The Judgment of Divorce incorporated a property settlement agreement (PSA). Relevant to this appeal, paragraph nineteen of the PSA stated plaintiff would pay defendant $3000 per month in permanent alimony. It also stated the "alimony payments shall continue until the death of [defendant], death of [plaintiff], re-marriage of [defendant,] or the [defendant]'s entry into a relationship tantamount to marriage."

Five months after the judgment of divorce, plaintiff remarried and moved to Cape May County. Defendant remained in Bergen County. The parties'

daughter lives with her family in Massachusetts, and their son resides with his family in Colorado.

Defendant began a dating relationship with K.C.[1] in 1998, which continues to present day. In 2009, plaintiff sought a reduction or termination of alimony based upon his retirement, a financial change in circumstances occasioned by his wife's illness and defendant's increased earnings, and defendant's cohabitation with K.C.

Regarding the cohabitation, plaintiff alleged defendant and K.C. were spending four-to-five nights per week at each other's residence. He alleged they vacationed together and were involved in various aspects of each other's social and family lives. In 2000, K.C. escorted defendant down the aisle at her daughter's wedding and appeared in family photos from the wedding. He also accompanied defendant to the birth of her first grandchild in 2003. In 2006, he attended another grandchild's first birthday. In 2008, he attended Christmas with defendant at her daughter's house. Plaintiff alleged the grandchildren referred to K.C. as "grandpa [K]" and K.C. took on a grandfatherly role.

Defendant admitted the dating relationship with K.C., but denied he was a live-in boyfriend. She certified "[t]he facts are . . . there is a man I date, and

---

[1] We utilize K.C.'s initials to protect his privacy because he is not a party.

A-5572-17T2

during most weekends we spend one night together either at my apartment or his apartment." She admitted traveling with K.C. to visit each other's families, but denied sharing expenses or financial resources with K.C.

The court denied plaintiff's request to terminate alimony, finding plaintiff did not establish a prima facie case of cohabitation. However, the court reduced plaintiff's alimony to $2250 per month based upon his retirement.

In 2018, plaintiff filed another motion to terminate his alimony and life insurance obligations retroactive to 2014, based on defendant's cohabitation. Defendant cross-moved to deny plaintiff's motion, enforce the life insurance obligation, and sought counsel fees and costs.

Plaintiff's application alleged the same facts as the 2009 motion, with a few updates. Plaintiff attached a two-page certification from each of the parties' children, which repeated plaintiff's narrative that defendant and K.C. were in a dating relationship. The certification from the parties' daughter claimed K.C. drove defendant to Massachusetts to visit her family, and repeated that K.C. participated in her wedding, was present for the birth of her child, and her children referred to him as "[g]randpa."

The new facts alleged in the daughter's certification asserted K.C. accompanied defendant on vacation to visit defendant's son in Colorado in 2013.

A-5572-17T2

The certification also alleged K.C. attended her aunt's eightieth birthday with defendant in 2017. The certification further stated: "In the summer of 2017, I came to New Jersey with my husband and my children to visit my family. My children stayed at [K.C.'s] home, with my mother and [K.C.]. My husband and I stayed at my mother's one-bedroom condominium only a few miles away." The son's certification mostly mirrored the daughter's.

Plaintiff's certification alleged K.C. moved to within approximately three-quarters of a mile from defendant's home in 2016. He alleged K.C. and defendant had access to each other's residences, but offered nothing to prove his claim. Plaintiff's certification attached a photograph posted by a grandchild taken during a 2014 trip to Colorado to visit the parties' son, referring to K.C. and defendant as his "grandparents." Plaintiff claimed the parties' fifteen-year-old granddaughter effectively sees K.C. as defendant's husband.

Moreover, plaintiff alleged, "[d]efendant does not drive. [K.C.] is solely responsible for transporting [defendant] anywhere she needs to go." He argued "defendant is dependent upon [K.C.]," and "[b]y being solely responsible for her transportation, he is effectively responsible for all of her . . . expenses" associated with transportation. He alleged defendant and K.C. "share in the costs for travel and meals during [their] trips."

A-5572-17T2

Defendant denied these assertions noting neither plaintiff nor their children lived close enough to witness her driving habits. She certified she "drive[s] all the time, but do[es] not like to drive on highways, and therefore, usually use[s] car services." Additionally, she stated when she and K.C. are on a trip together, involving highway driving, he drove. Defendant certified she often travels alone and in those instances, travels by air or train.

Defendant certified she is not dependent on K.C. for transportation. She noted her vehicle is titled, registered, and insured in her name. She drives it roughly five-to-six days a week, including shopping in town, running errands, traveling to the gym, and visiting dentists and doctors — all of whom are located near her residence. Defendant offered certifications from two close friends who witnessed her driving routine.

Defendant denied she and K.C. shared any living expenses. She certified when they do go out for meals together, they "try to share the costs fairly." She attached her apartment lease, renter's insurance policy, utility and cable bills, rent payment checks, auto insurance declaration page, auto repair receipts, and bank statements demonstrating she paid the expenses herself.

The motion judge denied the relief requested by plaintiff and defendant. He found "[i]t is un-controverted [defendant] and [K.C.] maintain separate

abodes. . . . It is un-controverted [they] do not comingle their finances. And that one does not pay the debts of the other." The judge found no other objective indicia defendant and K.C. enjoyed a relationship tantamount to a marriage.

Addressing plaintiff's evidence of cohabitation, the judge found the children's certifications had little probative value other than confirming defendant and K.C. sometimes visit the children together. The judge concluded plaintiff "has not made a prima facie showing . . . [K.C.] actually supports [defendant]. His only allegation in that regard is that [K.C.] drives [her] everywhere, and argues therefore, . . . [K.C.] covers [her] transportation costs." He concluded it "makes sense that she does not like to drive on the highways . . . and [plaintiff] has not shown otherwise that she drives herself." The judge noted the grandchildren referring to K.C. as "grandpa" was no more significant than a child referring to a parent's good friend as "uncle." The judge concluded it was "a term of affection rather than a term of a familial relationship."

Comparing the evidence presented with the evidence presented at plaintiff's 2009 motion, the judge concluded:

> The mere passage of time does not rise to the level of changed circumstances to warrant the modification of alimony. Given the foregoing, I do not find that [plaintiff] has made a prima facie showing that [defendant] . . . is in a [marital-]type relationship to

warrant the termination of alimony, or to warrant further discovery in that regard.

The judge denied defendant's request for counsel fees, noting only that plaintiff's application was not made in bad faith and therefore each party would be responsible for their own counsel fees.

I.

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "We do not disturb the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (internal quotations omitted) (alterations in original) (citing Cesare, 154 N.J. at 412). "We will reverse only if we find the trial judge clearly abused his or her discretion[.]" Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012). The same standard of review applies to a trial court's determination of counsel fees. Barr v. Barr, 418 N.J. Super. 18, 46-47 (App. Div. 2011). Conversely, "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

A-5572-17T2

## II.

Plaintiff argues he provided ample evidence defendant and K.C. were in a relationship tantamount to marriage by socializing, attending family and personal events together, and residing close to one another. He argues, notwithstanding the PSA's terms, alimony should have been terminated due to defendant's cohabitation, which constituted a change in circumstances. He asserts the parties' conflicting certifications warranted discovery and a plenary hearing.

"The duties of former spouses regarding alimony are always subject to review or modification by our courts based upon a showing of changed circumstances." Miller v. Miller, 160 N.J. 408, 419 (1999) (quoting Lepis v. Lepis, 83 N.J. 139, 145 (1980)). However, "[a] prima facie showing of changed circumstances must be made before a court will order discovery of an ex-spouse's financial status." Lepis, 83 N.J. at 157. While a prima facie showing of cohabitation can be difficult to establish because the readily available evidence is often also consistent with a less serious dating relationship, it is still a prerequisite to ordering discovery and a hearing. See Landau v. Landau, __ N.J. __, __ (App. Div. 2019) (slip op. at 17) (citing Konzelman v. Konzelman, 158 N.J. 185, 191-92 (1999).

Whether the relationship between a dependent spouse and third party is tantamount to marriage or cohabitation requires an analysis of the economic benefits of the relationship. Garlinger v. Garlinger, 137 N.J. Super. 56, 65 (App. Div. 1975); see also Reese v. Weis, 430 N.J. Super. 552, 571 (App. Div. 2013) (holding modifications of alimony are warranted when the dependent spouse economically benefits from cohabitation).

A modification based on a cohabitation is appropriate when: (1) the third party contributes to the dependent spouse's support; or (2) the third party resides in the dependent spouse's home without contributing anything toward the household expenses. Gayet v. Gayet, 92 N.J. 149, 153 (1983) (discussing Garlinger, 137 N.J. Super. at 61). "In short, this scheme permits modification for changed circumstances resulting from cohabitation only if one cohabitant supports or subsidizes the other under circumstances sufficient to entitle the supporting spouse to relief." Id. at 153-54. "[T]he inquiry regarding whether an economic benefit arises in the context of cohabitation must consider not only the actual financial assistance resulting from the new relationship, but also should weigh other enhancements to the dependent spouse's standard of living that directly result[s] from cohabitation[.]" Reese, 430 N.J. Super. at 557-58.

Furthermore, "[i]n addition to intimate or romantic involvement, indicia of cohabitation may 'include, but are not limited to, living together, intertwined finances such as joint bank accounts, sharing living expenses and household chores, and recognition of the relationship in the couple's social and family circle.'" Id. at 570 (citing Konzelman, 158 N.J. at 202).

"[W]here . . . the affidavits do not show the existence of a genuine issue of material fact, the trial judge . . . may decide the motion without a plenary hearing." Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976) (Cf. Skillman v. Skillman, 136 N.J. Super. 348, 350 (App. Div. 1975). Conflicting certifications giving rise to a genuine dispute of material facts can establish a prima facie showing because "they must be examined with an appreciation that if supported by competent evidence they would establish a prima facie cause of action." Conforti v. Guliadis, 128 N.J. 318, 328 (1992). However, "[c]onclusory allegations [should] . . . be disregarded. Only statements to which a party could testify should be considered." Lepis, 83 N.J. at 159.

The evidence plaintiff presented in his second application to terminate alimony on the basis of cohabitation virtually mirrored the evidence presented in the 2009 application. The evidence failed to establish a prima facie showing of either a physical cohabitation or a financial interrelationship demonstrating

defendant no longer needed alimony. At best, the plaintiff's proofs showed K.C. and defendant occasionally vacationed together, shared meals, and K.C. drove defendant on long distance trips.

The certifications plaintiff provided from the parties' children contained limited information that did not establish cohabitation, but instead provided supposition regarding defendant's relationship with K.C. Indeed, beyond observing K.C. drive defendant to Massachusetts or accompany her on a trip to Colorado, the certifications contained the same information presented to the court in 2009. And because each child resided far from defendant's residence, their assertions that defendant did not like to drive and K.C. was responsible for the couple's driving were conjectural.

On the other hand, defendant's certification attached a variety of objective proofs, including copies of her bills and finances, and certifications from her close friends. This evidence readily rebutted the absence of objective evidence proffered by plaintiff of an alleged economically interdependent relationship and the claim defendant relied upon K.C. for transportation.

Therefore, the motion judge's finding that there was no prima facie evidence of cohabitation or "a relationship tantamount to marriage," was

12

supported by the substantial, credible evidence in the record. The decision to deny plaintiff discovery and a plenary hearing was not an abuse of discretion.

III.

On the cross-appeal, defendant argues the motion judge should have awarded her counsel fees. She argues he failed to consider the Rule 5:3-5(c) factors.

Rule 5:3-5(c) states:

> [T]he court in its discretion may make an allowance . . . on final determination, to be paid by any party to the action . . . on any claim for . . . alimony . . . [or] enforcement of agreements between spouses[.] . . . In determining the amount of the fee award, the court should consider . . . the following factors: (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

Pursuant to Rule 5:3-5(c), a judge must make factual findings, which "adequately justify the denial of [an] application for counsel fees." Reese, 430 N.J. Super. at 586.

The motion judge only addressed whether plaintiff made the application in good faith. Rule 5:3-5(c) requires the motion judge to consider more than a party's good faith. The record here lacks an assessment of the other eight factors required by the rule. For these reasons, we reverse and remand the counsel fee determination to the motion judge to make findings consistent with this opinion.

Affirmed in part, reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5572-17T2